IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION


TASHON BROWN,

Plaintiff,
v.


                         CIVILACTION FILE NO. 4:20 CV 179 MLB

DETECTIVE REED
individual and professional;
CAPTAIN PEYTON individual and
professional; and JOHN DOES et al

## RESPONSE TO DEFENDANTS' REED & PEYTON'S 12b

## MOTION TO DISMISS &  MOTION FOR ADDITIONAL PAGES

   COMES NOW PLAINTIFF  by and through attorney of record, Kamau K.

Mason, Esq. and C Victor Long, Esq in the above-styled action and hereby files

this Response to the Defendants' in their individual and professional/official

capacities Motion for 12(b) dismissal as the Plaintiff has filed a well plead

complaint, which precludes Dismissal under the 12(b) legal standard pursuant to

11th Circuit guidelines. The Plaintiff intends to show the following:

## FACTUAL BACKGROUND & STATEMENT OF FACTS

   On June 24, 2018, in the early morning Plaintiff received a text from Laryan

Walker requesting her to meet him. The Plaintiff agreed to meet Mr. Walker at his

grandmother's resident, where Mr. Walker lived.

1

Sometime between 4:30 a.m. and 5:00am the Plaintiff met Mr. Walker at his grandmother's resident, where Mr. Walker livered.  When the Plaintiff met Mr. Walker, he suggested that she leave her vehicle in front of his grandmother's resident. She rejected that idea and decided to leave her vehicle at her sister's resident on Line Street.

The Plaintiff left Mr. Walker's grandmother's resident first going to her sister's on Line Street, thin king Mr. Walker was right behind her.  The Plaintiff arrived at her sister's resident and parked her vehicle to wait for Mr. Walker. As she sat waiting for M r. Walker, she heard a number of gun shots.

Shortly after she heard the gun shots, Mr. Walker arrived and motioned for the Plaintiff to get into his car. The Plaintiff secured her vehicle and got into Mr. Walker's vehicle.  As soon as the Plaintiff entered Mr. Walker's vehicle, she said "I just heard some gun shots."  Mr. Walker responded, "I had to shot a guy, he tried to get into my car".

From the Plaintiff's sister's they drove in Mr. Walker's vehicle to the park. While they were at the park, Mr. Walker decided that they need to split up. He believed that the car they were in was hot and the police would be looking for it. Mr. Walker suggested that they should leave the car. Before they exited the car, Mr. Walker suggested that the Plaintiff take his backpack, because as a female if

2

the police see her with the bag, they would not stop her; if he was seen with the bag he would be stopped.

As Mr. Walker suggested, the Plaintiff took the back pack, she and headed toward Line Street where she had left her car. She and Mr. Walker took different routes to

501 Line Street.  When the Plaintiff arrived at her sister's, Mr. Walker had already reached the address and was waiting on the porch.  At no time did the Plaintiff examined the back pack, as soon as she arrived at her sister's she gave Mr. Walker the back pack, got into her vehicle and drove home.

On June 25, 2018, the Plaintiff visited her sister's and while she was there, the Cedartown police came to search her sister's house looking for some of Mr. Walker's clothes.  On June 25, 2018, Mr. Walker was at the Plaintiff's sister's home when she arrived and spoke to her. Mr. Walker told her if the police ask her any questions about that night, that she should tell them that she was with him and that he didn't have to do with the shooting.

On June 28, 2018, the Plaintiff was at her sister's when Captain Peyton and Agent Rowlen came to her sister's resident and told her that she had to go to the police station so they could talk to her. She drove her car as they followed her to the police station.  Once she was at the police station, they took her into a room

and began questioning her about what had happened and were she with Mr. Walker when the man was shot.

The Plaintiff told the officers that she had met Mr. Walker at his grandmother's house. She went on to tell them that they did not stay at his grandmother's address; They went to her sister's on Line St., where she would leave her car.   The Plaintiff told the officers that they left Mr. Walker's grandmother's house in separate cars, with her leaving first. She told the officer that she arrived at her sister's house before Mr. Walker arrived.  The Plaintiff told the officers that while she waited for Mr. Walker, she heard a number of gun shots. Shortly after she heard the gun shots, Mr. Walker arrived and motioned her to join him in his car.

The Plaintiff secured her car and joined Mr. Walker in his car. The Plaintiff told the officers that once she got into Mr. Walker's car, she told him that she had heard gun shots. She further told the officer that Mr. Walked admitted to her that he "had to shot someone."  The Plaintiff told the officers that Mr. Walker told her that he got into it with this white guy and "he had to shot him".

The Plaintiff told the officers that Mr. Walker drove over by the park and decided that they should split up and meet up ant her sister's house. He gave the Plaintiff his back pack and told her to walk with. Then they headed to her sister's by different routes.  The Plaintiff told the officers that when she arrived at her

4

sisters, Mr. Walker was already there. She further informed the officers that she gave Mr. Walker the back pack and got into her car and drove home.

After the Plaintiff was interviewed, Officer Peyton and another Officer arrested the Plaintiff and a third officer took her to the Polk County jail. In spite, of what the Defendants had learn from witnesses, Mr. Walker and the Plaintiff, on June 29, 2018 Defendant Reed swore by affidavits to Magistrate Judge Jean Crain, stating, "On 06/24/2018 between 0500hrs Accused did commit the offense of Party to the Crime 16-2-20, thus did commit the offense of Murder, 16-5-1, When Accused did, unlawfully and with malice, caused the death of victim Ronald Bentley. The vehicle was driving the suspect vehicle when co-defendant Laryan Walker when Walker did use a deadly weapon offensively against said victim, this committing Party to the Crime of Aggravated Assault.

On June 29, 2018, Defendant Reed knew from Anita Alford that Mr. Walker was the "trigger man"

On June 29, 2018, in spite knowing the finding of the Officers' investigation revealed that the Plaintiff was not with Mr. Walker when he shot the victim, swore falsely in an affidavit charging the Plaintiff with O.C.G.A. 16-5-1c Felony, Felon y Murder, Malice, wherein he swore "Accused did commit the offense a Party to the Crime of Felony Murder 16-5-1© when the accused intentionally aided co-

defendant Laryan Walker while Walker committed the act of Aggravated Assault resulting in  the death of  said victim.

On June 29, 2018, in spite of the officers' investigation revealing that the Plaintiff was not with Mr. Walker when he shot the victim, Defendant Reed filed false statement in his sworn affidavit. He charged the Plaintiff with 16-5-21 Aggravated Assault. Wherein he states, "The accused by driving the vehicle, Accused intentionally aided co-defendant Laryan Walker when Walker did used a deadly weapon, offensively against said victim."

On June 29, 2018, in spite of the officers' investigation revealing that the Plaintiff was not in the car with Mr. Walker when he shot the victim, Defendant Reed filed false statements in his sworn affidavit. He charged the Plaintiff with 16-11-106, Felony, possession of firearm /Knife during the commission of Crime. Wherein he states in his sworn affidavit, "The accused did commit the offense of Party to a crime of Firearm during the commission of a Crime, 16-11-106, when accused did intentionally aid co-defendant Laryan Walker while Walker possessed a firearm during an Aggravated Assault.

On June 29, 2018 in spite of the officers' investigation revealing that the Plaintiff did not in any way hinder the apprehension of Mr. Walker, because the officers' investigation revealed that the Plaintiff was never with Mr. Walker at the scene (Robert L. Parks BLVD at Gibson) and that the Plaintiff returned the back

6

pack to Mr. Walker less than ten minutes after she had received it, without removing anything from the pack; Defendant Reed charged the Plaintiff with 16-10-50 Felony Hindering apprehension of a felon. Wherein he states, "Accused did commit of Hindering Apprehension of Felon when accused did take possession of a firearm from co-defendant Walker after Walker used said firearm during the 36

On June 29, 2018 in spite of the officers' investigation revealed that the Plaintiff did not tamper with the weapon that Mr. Walker used in the killing of the victim; Defendant Reed filed an unsworn document seeking an arrest warrant for the Plaintiff, charging her with 16-10—94, Felony Tampering with evidence.

On June 29, 2018, after the Plaintiff was interviewed by Captain Peyton and Agent Rowlen, Captain Peyton took the Plaintiff into a room and arrested her and placed her in handcuffs. The Plaintiff was taken to the Polk County jail by a Cedartown police officer.  Plaintiff had an outstanding warrant for a matter in Floyd County; she was transferred to Floyd County jail. When the Plaintiff's matters were resolved in Floyd County and she was ready to be released, she was informed that Cedartown police had charged her with Felony Murder and had placed a hold on her.

The Plaintiff called her mother, Ms. Thomas, and informed her about the charges and hold. Once Ms. Thomas learned of the charges and hold, she called the Cedartown Police Department to speak to the officer who had her daughter's her

7

case.   Ms. Thomas was told to hold and in minutes, Captain Peyton picked up the phone. She told Captain Peyton that she was Tashon Brown's mother and she wanted to talk to the officer who was working her case.

Officer Peyton told Ms. Thomas that he could not discuss the Plaintiff's case with her and hung up the phone.  Ms. Thomas and the Plaintiff's father, Mr. Tyrone Martin, went to the Cedartown Police Department and was able to talk to Captain Peyton and another officer. Ms. Thomas told the officers that they knew that her daughter had not killed anyone. She asked why she was being charged with murder.

Officer Peyton told Ms Thomas, that they knew that her daughter didn't have anything to do with the shooting, but they needed to hold her to help them with their case against Walker.  Then Captain Peyton told Ms. Thomas that there was nothing they could do to help her with the charges while she was in Floyd County jail. He went on to say that once she got back to Polk County they could help her with her charges.

The Plaintiff was return to Polk County jail on July 12, 2018; her arrest/Booking report lists the arresting officer as B Watters, badge # S24; she remained in the Polk County jail until she was able to make a bond on September 11, 2018.  On July17, 2018 on these Defendants' testimony the Plaintiff was indicted by the Grand Jury during a "Special Presentation"

8

The Plaintiff was indicted on seven felony charges:  Ct. 1: Malice Murder; C2: Felony murder; Ct. 3: Felony Murder; Ct. 4: Felony Murder; Ct. 5: Aggravated Assault; C6: Aggravated Assault; Ct. 7: Possession of Firearm during Commission of a Felony and Ct.

On September 11, 2018, Plaintiff Tashon Brown was issued a property security bond in the amount of $39,000.00, wherein she was restricted to the jurisdiction of issuing Court. The Plaintiff gave a written statement of the facts of the case to Defendant Reed before she was released.

On May 20, 2020, the Polk County District Nolle Prose all charges filed against the Plaintiff by these Defendants. The Polk County ADA Jaeson R. Smith Nolle Pros all the charges against the Plaintiff. ADA Smith stated in a recorded statement before the Court that he has no intention of refilling any of the dismissed charges against the Plaintiff.

On May 22, 2020, the Plaintiff's attorney serviced an anti litem notice on the City of Cedartown, Georgia Risk Management and Georgia Department of GBI. On June 10, 2020 the Plaintiff's attorney received a response from Atty Jeff Phillips, responding to the anti litem notice sent to City of Cedartown.

## Rule 12(b) Dismissal Standard.

"To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level;

9

if they do not, the plaintiff's complaint should be dismissed." James River Ins, Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl.Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)); see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). The former rule that "a complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," LaGrasta v. First Union Sec., Inc. 358 F. 3d 840, 845, (11th Cir. 2004) – has been retired by Twombly. James River Ins. Co., 540 F. 3rd at 1274. Thus, the Court engages in a two-step approach: "When there are well placed factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement relief." Ashcroft v Iqbal., U.S. 626 (2009).

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read in conjunction with Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," Bell Atlantic Corp. v. Twombly, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted). A pleading

10

that offers "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." [Twombly, 550 U.S., at 555]. Nor does a complaint

suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

Id., at 557.

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure

12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint

must contain sufficient factual matter, accepted as true, to "state a claim for relief

that is plausible on its face." Id., at 570. A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. Id., at 556.

The plausibility standard is not akin to a "probability requirement," but it asks

for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where

a complaint pleads facts that are "merely consistent with" a defendant's liability, it

"stops short of the line between possibility and plausibility of 'entitlement to

relief.'" Id., at 557 (brackets omitted). Two working principles underlie our

decision in Twombly. First, the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a

motion to dismiss we must take all of the factual allegations in the complaint as

11

true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556.

Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Iqbal, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis supplied). While the Eleventh Circuit has long held claims

12

asserted under § 1983 against individual officers to a higher-than-usual standard, in light of the plausibility requirement as articulated in Iqbal, utilization of this standard is no longer warranted. [Even though] the Iqbal opinion concerns Rule 8(a)(2) pleading standards in general, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights. The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion. The Supreme Court held, citing Twombly, that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss.

The Court did not apply a heightened pleading standard. While Swann [v. Southern Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004)] , GJR [v. Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359 (11th Cir. 1998)], and Danley [v. Allen, 540 F.3d 1298 (11th Cir. 2008)] reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree . . . that those cases were effectively overturned by the Iqbal court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal.

A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010) (emphasis supplied).

Further, the Eleventh Circuit has regularly reiterated that district courts have a "supervisory obligation" to ensure that complaints comply with the requirements of Federal Rules of Civil Procedure 8 and 10. Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006). This includes ensuring that plaintiffs link the claims they make to the relevant factual predicates upon which those claims are premised with sufficient specificity to permit defendants (and courts) to comprehend the nature of the allegations their complaints contain. E.g., Lampkin-Asam v. Volusia County School Bd., 261 Fed. Appx. 274, 277 (11th Cir. 2008) ("[W]e have recently observed that district courts have a 'supervisory obligation,' under Rule 12(e), to sua sponte direct a plaintiff to better plead his complaint 'when a shotgun complaint fails to adequately link a cause of action to its factual predicates.' ") (quoting Wagner, 464 F.3d at 1275).

So-called "shotgun" pleadings ignore the requirements of Federal Rule of Civil Procedure 8(a) that a complaint contain a short and plain statement of the claim

14

demonstrating entitlement to relief. Fed. R. Civ. P. 8(a)(2). They also completely disregard Rule 10(b)'s requirement that discrete claims should be pled in separate counts. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); see also Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).

As noted above, when confronted with such a pleading that might otherwise contain sufficient factual allegations to state a claim, but in the absence of a motion for more definite statement, courts are under a duty to, sua sponte, order the complaint repled before resorting to more drastic measures, such as dismissal. See, e.g., Wagner, 464 F.3d at 1273 (reversing dismissal of a shotgun complaint, stating that the "proper remedy was to order repleading sua sponte"); Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001) (discussing district courts' "duty" to order a shotgun complaint repled as an initial matter, reserving dismissal as a sanction for noncompliance with such an order).

## Standard of Review for Official and Qualified Immunity & Brief Analysis

Officers raising their defenses in a motion for summary judgment should prevail if there is "no genuine dispute as to any material fact" and they are entitled to immunity "as a matter of law." Fed.R.Civ.P. 56(a). In making this determination, we view the evidence in the light most favorable to the [Plaintiffs] and draw all reasonable inferences in their favor. See Valderrama v. Rousseau, 780 F.3d 1108, 1112 (11th Cir.2015). But an inference is not "reasonable" and a

dispute is not "genuine" if it is based on conclusory allegations and speculation. Id.; Marshall v. City of Cape Coral, 797 F.2d 1555, 1559 (11th Cir.1986).

*Keele v. Glynn County* states:  Official immunity protects county officers and employees from certain state-law claims. Official immunity protects officials where the claim arises out of the official's performance of a discretionary function. **It does not protect officials who "negligently perform or fail to perform their ministerial functions." *Peterson v. Baker,* 504 F.3d 1331, 1339 (11th Cir. 2007) (citing *Gilbert v. Richardson,* 264 Ga. 744, 452 S.E.2d 476, 483 (1994)). Moreover, it does not protect officials who "act with actual malice or intent to cause injury in the performance of their official functions**." *Id.* **(citing *Gilbert,* 452 S.E.2d at 483).**

 Moreover, A local government body can be held liable under 42 USC Section 1983 when execution of a government's policy or custom inflicts the injury. Carter v Dekalb County Ga., 521 F. App'x 725, 728 (11th Cir. 2013) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Accordingly, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of official government policy or custom."  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005). A threshold identification of a custom or policy should initially be made.  McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004). There are three ways to show a governmental policy or custom:  (1) an

express policy; (2) a widespread practice so permanent and well settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy making authority.  Cuesta v. Sch Bd. Of Miami-Dade Cnty., 285 F.3d 962, 966-68 (11th Cir. 2002).

**The United States Supreme Court** case HOPE v. PELZER et al.(2002) No. 01-309 Argued: April 17, 2002 Decided: June 27, 2002 notes:  Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful. Officers sued in a §1983 civil action have the same fair notice right as do defendants charged under 18 U. S. C. §242, which makes it a crime for a state official to act willfully and under color of state to deprive a person of constitutional rights.

The Plaintiff here contends that the allegations set forth in the complaint adequately allege that the Police Officers knew that she was not capable of committing the crimes associated with the [murder] and in fact swore out the warrant[s] without probable cause for the murder; their acts being arguably malicious in nature.

Additionally, in knowingly using their positions of authority and under color of law to unlawfully swear out the warrants, Qualified Immunity also disappears.  As noted below, the addition of multiple counts [all of which were nolle prosequied] does not insulate the Police Officer Defendants simply because there may have

17

been probable cause for [one] of the counts.  The Courts cannot be used as the

proverbial wall for the government to throw its claims against in hopes that a cause

of action will stick.  The very nature of justice in such regard becomes offended.

## Standard of Review for Malicious Prosecution

Citing to Luke v. Gulley, the Defendant is liable under the Fourth Amendment

for malicious prosecution, which is "`shorthand' for a claim of deprivation of

liberty pursuant to legal process." *Laskar v. Hurd,* No. 19-11719, slip op. at 26

(11th Cir. Aug. 28, 2020) (quoting *Williams v. Aguirre,* 965 F.3d 1147, 1157 (11th

Cir. 2020)). To succeed on this claim, Luke must prove "that he suffered a seizure

pursuant to legal process that violated the Fourth Amendment," *id.* at 7, and satisfy

"the elements of the common law tort of malicious prosecution," *id.* at 8

(quoting *Williams,* 965 F.3d at 1157). Our recent decisions on malicious

prosecution acknowledge that significant overlap exists between these

requirements.

The common-law elements of malicious prosecution require the Plaintiff to

establish "that the officials instituted criminal process against him `with malice and

without probable cause' and that the broader prosecution against him terminated in

his favor." *Id.* (quoting *Williams,* 965 F.3d at 1157). If a plaintiff establishes that a

defendant violated his Fourth Amendment right to be free from seizures pursuant

to legal process, he has also established that the defendant instituted criminal

18

process against him with malice and without probable cause. *See Williams,* 965 F.3d at 1162-65. This proof will also satisfy the plaintiff's burden to establish causation. *See id.* at 1167.

Here, the Plaintiff asserts that the Police who arrested her on a valid foreign warrant swore out additional fabricated charges against her without probable cause so as to connect her to a murder that they [knew] she could not have committed. Therefore, the malicious acts begin at the onset of the hold that the STATE and its officers placed on her.

As a summation to the brief, the Plaintiff asserts that the claims for malicious prosecution and all other related civil rights based and state-based claims are viable because:

   a.  The Plaintiff was arrested, prosecuted and prevailed in Court proceedings against her accusers and the STATE;

   b.  The warrant applied for by the Defendant Officers was malicious because the Officers had clear and convincing evidence that the [Plaintiff] was not in the vehicle when the murder occurred and Officers had clear and convincing evidence that she neither tampered with evidence nor hindered the apprehension of the assailant as she in fact provided statements that lead to his arrest; thereby rebutting the presumption that the officers are protected by immunity.  Citing to Black v. Wigington, 811 F.3d 1259 [11[th] Cir.2016]

which states:  A police officer who applies for an arrest warrant can be liable

for malicious prosecution if he should have known that his application

"failed to establish probable cause," Kelly v. Curtis, 21 F.3d 1544, 1553

(11th Cir.1994) (quoting Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct.

1092, 1098 (1986)), or if he made statements or omissions in his application

that were material and "perjurious or recklessly false," id. at 1554 (citing

Franks v. Delaware, 438 U.S. 154, 156, 165–71, 98 S.Ct. 2674, 2676, 2681–

84 (1978)). Concomitantly, a police officer cannot be liable for malicious

prosecution if the arrest warrant was supported by probable cause. See

Wood, 323 F.3d at 882.  Additionally  Johnson v Knorr 477 F.3d 75 (3d Cir.

2007) states:  Our result is not inconsistent with the principle that, in

analyzing false arrest claims, a court to insulate a defendant  from liability

need find only that "[p]robable cause. . . . exist[ed] as to any offense that

could be charged under the circumstances." *Barna v. City of Perth*

*Amboy*, 42 F.3d at 819. Thus, we do not question the rule that there need not

have been probable cause supporting charges for every offense for which an

officer arrested a plaintiff for the arresting officer to defeat a claim of false

arrest. See *Wright*, 409 F.3d at 602-04. The rationale at this rule is that "[t]he

existence of probable cause [for one offense] . . . justifie[s] the arrest-and

defeats [the plaintiffs] claim of false arrest-even if there was insufficient

20

cause to arrest on the [second offense] alone." *Edwards v. City of Philadelphia*, 860 F.2d 568, 576 (3d Cir.1988). However, a cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which, as we have noted, is likely to have placed an additional burden on the plaintiff.

c.  There was no negotiated [DEAL] that would extinguish the Plaintiff's right to for malicious prosecution as the District Attorney has stated on the record in Court Proceedings that the Plaintiff in the present action was not given any [DEAL] by either the STATE of the Court; and

d.  There is caselaw which speaks to the facts of the case at BAR that validate the claims of the Present Plaintiff who agreed only to validate the claims of her own innocence through her Attorney and therefore did not plead to any crime whatsoever.  See:  **DEMETRIUS RASHARD LUKE, Plaintiff-Appellant, v. JAMEEL GULLEY, Defendant-Appellee.** No. 20-11076, Non-Argument Calendar. **United States Court of Appeals, Eleventh Circuit.** Filed September 15, 2020.  Appeal from the United States District Court for the Middle District of Georgia, D.C. Docket No. 1:19-CV-00122-LAG which disagrees with Gulley's argument that Luke did not receive a

favorable termination. Even though we consider the dismissal order, we must construe the order in the light most favorable to Luke and resolve all reasonable inferences in his favor. *St. George v. Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir. 2002). And when placed in that light, the order does not eliminate every reasonable inference that Luke received a favorable termination.  The Court noted:  Luke has alleged that his prosecution formally ended when the trial court dismissed all charges against him, so he will satisfy the requirement unless the prosecution terminated with his "conviction on or admission of guilt to each charge that justified his seizure." *Laskar,* slip op. at 28. The warrant that justified his pretrial detention rested on Gulley's accusation that he was guilty of felony murder. So to be "unfavorable," the dismissal must rest on Luke's admission of guilt to that charge.  Even after we incorporate the dismissal order, Luke's complaint does not eliminate every reasonable inference that he did not admit that he was guilty of felony murder. The dismissal order states that the prosecutor offered to move to dismiss the charges against Luke if Luke "would allocute and provide testimony against the remaining defendants." It also states that Luke testified at the ensuing allocution hearing. But the order does not describe whether the deal required Luke to allocute to the felony-murder charge, much less whether he actually did so. Because the complaint

alleges that Luke was indicted on several other unspecified charges in addition to felony murder, we do not know whether Luke admitted that he was guilty during the hearing. Because we can reasonably infer that he did not admit to felony murder during the hearing, we must conclude, at this stage, that Luke's complaint alleges that he received a favorable termination. We VACATE the order dismissing Luke's complaint of malicious prosecution against Gulley and REMAND for further proceedings.

## ARGUMENT AND CITATION OF AUTHORITY

A. **Plaintiff's Statements are not Conclusory and Should be Construed in a Light Most Favorable to the Non Moving Party as the Noted Paragraphs 30-37 and 53-70 are noted as statements of facts as presented by the Plaintiff.**

As noted, a complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," LaGrasta v. First Union Sec., Inc. 358 F. 3d 840, 845, (11th Cir. 2004) – has been retired by Twombly.  James River Ins. Co., 540 F. 3rd at 1274.  Thus, the Court engages in a two-step approach: "When there are well placed factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement relief."  Ashcroft v Iqbal., U.S. 626 (2009).

The statements provided within the Complaint as read are plausible in nature, written in short plain statements and therefore meet the required standards under Iqbal. Id. Moreover, the Defendants in simply stating the paragraph numbers [without providing analysis to the Court which would lead the Court towards determining that the statements are not well plead] lacks substantial legal justification for dismissal. The Defendants, here, expect the Court to determine that the statements written and asserted by the Plaintiff lack merit without proper analysis.

Finally, the Court should not dismiss the Complaint without providing an opportunity to amend, supplement or correct the errors as noted by the Court itself. As noted above, when confronted with a pleading that might otherwise contain sufficient factual allegations to state a claim, but in the absence of a motion for more definite statement, courts are under a duty to, sua sponte, order the complaint repled before resorting to more drastic measures, such as dismissal. See, e.g., Wagner, 464 F.3d at 1273 (reversing dismissal of a shotgun complaint, stating that the "proper remedy was to order repleading sua sponte"); Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001) (discussing district courts' "duty" to order a shotgun complaint repled as an initial matter, reserving dismissal as a sanction for noncompliance with such an order).

**B. <u>Count I False Imprisonment is Viable.</u>**

False imprisonment is the unlawful restraint of a person's liberty or freedom without his or her consent or any legal justification. It may be committed by words, acts, or both.  Physical violence is not necessary for an act to qualify as false imprisonment. The two essential elements of a false imprisonment claim are:

1.  Intentional detention or restraint of a person against his or her will

2.  Unlawfulness of the detention or restraint

Here the Plaintiff has provided the Court with facts sufficient for the allegation to remain.  The Plaintiff contends that the acts of the officers were malicious and enacted under color of title.

**C. <u>Count II Does Not Fail as the Termination of the Criminal Case is Not Based Upon an Agreement Between the Prosecutor</u>**

While the Defendants assert that the Plaintiff's Nolle Prosequi came subsequent to a [deal] between the Prosecutors and the [now] Plaintiff, the Plaintiff asserts that there is no subsequent requirement for her to testify in order to maintain her freedom.  In short, the Plaintiff did not turn state's evidence, has not provided any written and/ or oral testimony to assist the State in its prosecution of the Criminal Defendant Walker and is not required to appear at trial in order to maintain her freedom.

The Defendants cite to UBOH V. RENO without providing an analysis for the Court.  UBOH v. RENO | 141 F.3d 1000 | 11th Cir. 1998.

Uboh clearly states:  The Supreme Court has observed that the requirement of favorable termination in the context of malicious prosecution suits prevents parallel litigation over the issues of probable cause and guilt and the possible creation of conflicting resolutions arising out of the same or identical transactions. See Heck, 512 U.S. at 484, 114 S.Ct. at 2371.

Courts have further reasoned that "only terminations that indicate that the accused is innocent ought to be considered favorable."   Hilfirty, 91 F.3d at 580 (relying on Restatement (Second) of Torts §  660 cmt. a ("Proceedings are 'terminated in favor of the accused' . only when their final disposition is such as to indicate the innocence of the accused."));  Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir.1994) (per curiam) (same);  Singleton v. City of New York, 632 F.2d 185, 193 (2nd Cir.1980) (same).

Thus, courts have found that withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination and, thus, cannot support a claim for malicious prosecution.   See, e.g., Taylor, 36 F.3d at 455-56 (**holding that pretrial diversion agreement, in which accused must acknowledge responsibility for offense conduct, "does not terminate the criminal action in favor of the criminal defendant for purposes of bringing a**

26

**malicious prosecution claim**.");  Laster v. Star Rental, Inc., 181 Ga.App. 609, 353 S.E.2d 37, 38 (Ga.App.1987) **("[W]here the termination of the prosecution has been brought about by compromise and agreement of the parties, an action for malicious prosecution can not be maintained**.").   Similarly, courts have refused to permit a finding of favorable termination where the stated basis for the dismissal of criminal charges has been "in the interests of justice," see Singer, 63 F.3d at 118;  Hygh v. Jacobs, 961 F.2d 359, 368 (2nd Cir.1992), or where a conviction has been reversed and the cause expressly remanded for retrial, see Brandley v. Keeshan, 64 F.3d 196, 199 (5th Cir.1995).

   **Consistent with each of the policies underlying the favorable termination requirement, however, courts have found favorable termination to exist by virtue of an acquittal, an order of dismissal reflecting an affirmative decision not to prosecute, a dismissal based on the running of the statute of limitations, <u>an entry of a nolle prosequi</u>, and, in some cases, a granted writ of habeas corpus**.   See, e.g. Hilfirty, 91 F.3d at 584-85 (where court determined that when the grant of nolle prosequi was not the result of a compromise, "grant of nolle prosequi was sufficient to satisfy the requisite element of favorable termination of the criminal action.") (internal quotation marks and citation omitted);  Brandley, 64 F.3d at 199 ("Even a prosecutor's failure to act on remand will at some point entitle a defendant to an order of dismissal.").

27

As stated, there has been neither a condition precedent that required Tashon Brown to provide testimony in order to assist the State in its prosecution of Walker.  The Statements provided to her Attorney C. Victor Long were comprised merely of her innocence and not made up of any additional statements that would assist the Prosecution.

Moreover, as noted above, there is no condition subsequent that would require her to appear at trial.  In short, there are no writings, agreements or contracts in place that state that if she testifies against a co-defendant, then her charges will be dismissed and there are no writings or agreements that note that her failure to provide a true statement to the court in and support of the prosecution will result in a re-charging or subsequent arrest or indictment.  There is only the statements provided that comport with her own innocence.

In fact, the present cause of action aligns  with Hilfirty **which states:  courts have found favorable termination to exist by virtue of an acquittal, an order of dismissal reflecting an affirmative decision not to prosecute, a dismissal based on the running of the statute of limitations, <u>an entry of a nolle prosequi</u>, and, in some cases, a granted writ of habeas corpus**.   See, e.g. Hilfirty, 91 F.3d at 584-85 (where court determined that when the grant of nolle prosequi was not the result of a compromise, "grant of nolle prosequi was sufficient to satisfy the requisite element of favorable termination of the criminal action.")

28

Here, there exists a Nolle Prosequi signed by the Prosecutor; not a dismissal. The nature of the Nolle Prosequi stems from the idea that the State itself lacks the legal reasoning or justification to move forward; not that a deal has been struck or that the Defendant has made an admission of some form. Id.

District Attorney Smith states on the record within the proceeding:  "Judge, I mean, I'll be honest, judge. I've got the nolle prosequi ready . I have no intentions of I mean, I can tell the court on the record, in good faith, I have no…based on every bit of information I know and possess, that there's I don't have any intentions on bringing anything back. I've got the law prosequi ready for Mr. Long and Mrs. Brown to sign.  I've already put my signature on it.  We can have your honor sign it immediately here today & have everybody a copy." See Transcript. A

What is not present within the transcript is an additional statement by the district attorney's office noting to the court of any condition precedent, condition subsequent, or any associated deal made in order to allow for the law prosequi.

 In fact, District Attorney Smith states to the Court on pages 4 and five:  " Miss Brown, I just want to quickly …and we're not going to go into a whole lot of detail today, but I also want to pre face this : you and I have not had any conversations, at all , prior to right now ; is that correct ?

The Defendant states: "That's correct, Sir."

29

The District Attorney then states:  "And you haven't had any conversation with the district attorney's office at all , right ?"

The defendant states: "Yes, Sir."

Mr. Smith then inquires: "And did I promise you anything at all, or promise your attorney anything at all 4 your testimony today?"

The defendant states: "No, Sir."   See pages 4 and 5 of the transcripts.

Moreover, Ms. Brown is not listed as a Co-defendant in the noted criminal matter. If she has not been listed as a Co-defendant, then she cannot turn states evidence and testify against a Co-conspirator in exchange for leniency. Her testimonial statements are statements of her own innocence provided for the Court's understanding of the STATE'S willingness to nolle prosequi her individual matter.

The defendants, therefore, cannot re interpret a single document in their favor that cannot be validated or verified by any court under law solely for the purpose of obtaining a motion to dismiss.

Moreover, the Nolle Prosequi was based upon the fact that there was no evidence against Ms. Brown; her testimony on that date being provided to assure the Court and to confirm the evidence already in possession by the STATE that she was not a party to the crime.

30

Finally, the Plaintiff provides caselaw strengthening the present cause of action. DEMETRIUS RASHARD LUKE, Plaintiff-Appellant, v. JAMEEL GULLEY, Defendant-Appellee. No. 20-11076. United States Court of Appeals, Eleventh Circuit. Filed September 15, 2020.  Appeal from the United States District Court for the Middle District of Georgia, D.C. Docket No. 1:19-CV-00122-LAG which disagrees with Gulley's argument that Luke did not receive a favorable termination.

As noted above in the summation, the Appellate Court notes:  Even though we consider the dismissal order, we must construe the order in the light most favorable to Luke and resolve all reasonable inferences in his favor. St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). And when placed in that light, the order does not eliminate every reasonable inference that Luke received a favorable termination.

The Court noted:  Luke has alleged that his prosecution formally ended when the trial court dismissed all charges against him, <u>so he will satisfy the requirement unless the prosecution terminated with his "conviction on or admission of guilt to each charge that justified his seizure.</u>" Laskar, slip op. at 28.

The warrant that justified his pretrial detention rested on Gulley's accusation that he was guilty of felony murder. So to be "unfavorable," the dismissal must rest on Luke's admission of guilt to that charge.  Even after we incorporate the dismissal order, Luke's complaint does not eliminate every reasonable inference

31

that he did not admit that he was guilty of felony murder. The dismissal order states that the prosecutor offered to move to dismiss the charges against Luke if Luke "would allocate and provide testimony against the remaining defendants." It also states that Luke testified at the ensuing allocution hearing. But the order does not describe whether the deal required Luke to allocate to the felony-murder charge, much less whether he actually did so. Because the complaint alleges that Luke was indicted on several other unspecified charges in addition to felony murder, we do not know whether Luke admitted that he was guilty during the hearing. Because we can reasonably infer that he did not admit to felony murder during the hearing, we must conclude, at this stage, that Luke's complaint alleges that he received a favorable termination.  We VACATE the order dismissing Luke's complaint of malicious prosecution against Gulley and REMAND for further proceedings.

The present cause of action mimics the facts of Lucas in that the Plainitff was arrested based upon a warrant, the STATE chose first to prosecute the matter, the STATE then optioned to dismiss the matter in favor of the Plaintiff; thereby creating the claim for malicious prosecution, and the STATE actors have filed their motion to dismiss after being sued.

The Court in its analysis should follow Lucas in that there has been no guilty plea in reference to the immediate case at BAR and that the absence of the guilty

plea creates the presumption of favorable termination for the Plaintiff.  The present Court cannot dismiss the cause of action for failure to State a Claim where the Plaintiff has properly asserted the claims; noting that neither Government Immunity, Qualified Immunity, nor the 12b motion to dismiss can offer a veil of protection that precludes the cause of action from moving forward where the Plaintiff has satisfied the required elements of the claim.

Additionally, Luke v. Gulley cites to pre existing case law dating back to 2002 which required the Court to look closely at the prongs of analysis for Malicious Prosecution in determining that Officers can be held laible when their warrants were found lacking in probalable cause.  Id. St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

### D. The Intentional Infliction of Emotional Distress Claim Does Not Fail.

The four elements which must be proved in order to sustain a claim of intentional infliction of emotional distress are: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe. . . . [I]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff

33

to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Northside Hosp. v. Ruotanen, 246 Ga.App. 433, 435, 541 S.E.2d 66 (2000).

The Defendants site to Biven Software, Inc. v Newman 473 S.E.2d 527 (1996) without providing aligning facts or a clear analysis for this Court. Id.  While the Biven Court did conclude that the Plaintiff's claims for Intentional Infliction of Emotion Distress failed, the reason[s] for the dismissal do not comport factually or analytically with the case at BAR.

First Bivens involves a plaintiff who was terminated from a software firm and upon the termination destroyed intellectual property of the software company.  The Plaintiff chose to pay restitution to the software company in order to forego criminal litigation.  Id

The Bivens Court notes:  Neither do Biven's actions in terminating Newman constitute outrageous conduct. The record shows, and Newman does not contest, that at the time she was terminated she "was an at-will employee who could be terminated with or without cause and without regard to the motives of [her] employer. [Cit.] Accordingly, `that [Biven] discharged [Newman] for whatever reason, without more, gives rise to no claim for the intentional infliction of

34

emotional distress.' [Cit.]" Phillips v. Pacific & Southern Co., 215 Ga. App. 513, 515, 451 S.E.2d 100 (1994).

Furthermore, Biven's criminal prosecution of Newman cannot provide a basis for her claim. The magistrate's finding of probable cause forecloses Newman's use of the criminal prosecution as an element of a cause of action. See OCGA §§ 51-7-40, 51-7-44; Wal-Mart Stores v. Blackford, 264 Ga. 612, 449 S.E.2d 293 (1994); Lolmaugh v. T.O.C. Retail, 210 Ga.App. 605(2), 436 S.E.2d 708 (1993).

Furthermore, because Newman settled Biven's claim concerning the computer files, she is estopped from denying that Biven had probable cause to file the charges. Commercial Plastics, etc., Corp. v. Molen, 182 Ga.App. 202, 204(1), 355 S.E.2d 86 (1987). Because Biven had probable cause, its actions in filing the charges were not outrageous.  Id.

Here, the facts in connection with the case at BAR surround the STATE, not a private company, placing a jailhouse hold on the Plaintiff based upon allegations in connection with a shooting that the STATE knows that she was not a part of.

The Plaintiff contends that knowingly and intentionally holding an innocent in jail for approximately 60 days is the very epitome of Intentional Infliction of Emotional Distress as the STATE was fully aware that there was no evidence connecting her to [any] crime.

35

Moreover, while the Defendants note that at least one of the alleged crimes did comport with the probable cause standard, the Plaintiff can legally file a complaint on any allegation that has been dismissed in her favor.  Therefore, even if the Court agrees with the Defendants as it relates to the proper reaching of the probable cause claim for one of the [allegations] there still exists a claim for the second which did not reach the requisite level of probable cause.

In fact, if the Plaintiff has been charged with a felony, and the felonies had been reduced to misdemeanors, the Plaintiff would have a civil action for the dismissed Felony matters.

Therefore, the use of Bivens alongside erred analysis should preclude 12b dismissal of the Intentional Infliction of Emotional Distress claim.  As stated, the STATES knowingly and intentionally holding an innocent for 60 days is shocking to the Conscience as it is the very epitome of violating one's constitutional rights. The Incarceration has had long lasting impressions on the plaintiff who was reduced emotionally, mentally and economically by the very STATE which is sworn to protect her.

Finally, the Defendants cannot rely upon the assertion that a [deal] was made that precludes civil litigation as the District Attorney has noted on the record that the Plaintiff was offered nothing. See Transcript A.

### E. __Count IV Does not Fail Because the Prosecution Did Terminate in Her Favor & The States Nolle Posequi Nullifies the Argument that Probable Cause Existed.__

The Defendants have relied in error upon *REMENESKI v. KLINAKIS.* 473 S.E.2d 223 (1996) [222 Ga. App. 12] which involves a physical altercation between co-workers.  Within the proceeding, the Plaintiff requested summary judgment on two criminal elements presented by the STATE.  Of the two criminal claims, one claim was dismissed; leaving the remaining claim to move to jury trial. Id. The REMENESKI Court upon reviewing the record dismissed the former Criminal Defendant's complaint for malicious prosecution based primarily upon the fact that the two claims arose from the same nexus of facts and second, because one of the claims did in fact move forward with the criminal proceedings. Id.

Presiding Judge Birdsong states in his opening: Following our grant of an interlocutory appeal, Victor J. Remeneski appeals the trial court's partial denial of his motion for summary judgment on Anthony S. Klinakis's claim for malicious prosecution. Remeneski contends summary judgment should have been granted on all of Klinakis's claims against him because:

A. both charges against Klinakis's arose from a single incident;

B. and the trial court denied Klinakis's motion for a directed verdict of acquittal on one of the charges arising from that incident.  Id.

37

The Court notes:  "The overriding question in actions for malicious prosecution is not whether the plaintiff was guilty, but whether the defendant had reasonable cause to so believe—whether the circumstances were such as to create in the mind a reasonable belief that there was probable cause for the prosecution. This burden is not carried in any reasonable sense unless the plaintiff [Klinakis] shows that under the facts as they appeared to the prosecutor at the time of the prosecution, that the defendant [Remeneski] could have had no reasonable grounds for believing the plaintiff to be guilty of the charge brought." (Citation and punctuation omitted.) *Monroe v. Sigler,* 256 Ga. 759-760, 353 S.E.2d 23. The denial of a motion for a directed verdict of acquittal constitutes a binding determination of the existence of probable cause. *Id.* at 761, 353 S.E.2d 23. Further, "[t]he gravamen of the complaint is the absence of probable cause on the part of the person instituting the prosecution. Probable cause is absent when the circumstances are such as to satisfy a reasonable person that the accuser had no ground for proceeding but his desire to injure the accused." (Citation and punctuation omitted.) *Wal-Mart Stores v. Blackford,* 264 Ga. 612, 613, 449 S.E.2d 293.

Remeneski asks us to hold that, because the trial court made a binding determination there was probable cause to bring the simple assault charge, this determination should also apply to the fighting words charge because both charges were based upon the same incident. Indeed, there is no dispute that the two charges

38

arose from the same confrontation between Klinakis and Remeneski; the charges arose from Klinakis's actions occurring at the same time and at the same place. The only difference is that one charge is based on Klinakis's words and the other on his conduct. The issue thus presented is whether the trial court's binding determination there was probable cause for prosecuting the charge based upon Klinakis's physical conduct also constitutes a binding determination there was probable cause for prosecuting the charge based upon his utterances.  Id.

Here, there is no method to determine probable cause as it relates to either of the two criminal claims Hindering the Apprehension of a Criminal [Felon] or Tampering with Evidence because both of the stated claims were nolle prosequied by the District Attorney's Office.

The case relied upon by the Defendants, as utilized is both factually inconsistent and analytically incorrect.  First, the Defendants are not legally capable at this point to argue that probable cause existed for the two criminal charges when the DA Nolle Prosequied all of the matters without  moving forward to a jury trial.

Second, the record in the criminal complaint lacks a probable cause hearing. Third, the DA himself does not note to the Court his belief within the proceeding that Ms. Brown either: Tampered with Evidence according to O.C.G.A. **§ 16-10-94** by "with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he

knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence,  or  under § 16-10-50 Hindering apprehension or punishment of criminal (a) A person commits the offense of hindering the apprehension or punishment of a criminal when, with intention to hinder the apprehension or punishment of a person whom he knows or has reasonable grounds to believe has committed a felony or to be an escaped inmate or prisoner, he: (1) Harbors or conceals such person; or (2) Conceals or destroys evidence of the crime.

Ms. Brown's holding or carrying a bag for mere moments in time does not rise to the level of hindering prosecution by hiding a felon or knowingly destroying, altering, concealing, or disguising physical evidence or making, devising, preparing, or planting false evidence.  And the Defendants' assertions that her actions  rose to the level of probable cause creates a genuine issue of material fact that should be determined at trial; not determined at the 12b level.

In absence of the District Attorney stating aloud to the Court that probable cause existed in the matters during the hearing where he nolle prosequied [both] criminal complaints, the civil Defendants here do not possess the legal standing to determine probable cause existed.

**F.  <u>Punitive Damages Should Remain Based Upon the Validity of the State and Federal Claims.</u>**

O.C.G.A. § 51-12-5.1. states that Punitive damages may be awarded in Georgia personal injury and wrongful death lawsuits only when there are "aggravating circumstances." *See* O.C.G.A. § 51-12-5.1(a). Punitive damages are not for deterring a certain type of behavior in society at large, but rather "to penalize, punish, or deter" a particular defendant. *Id*.

Punitive damages, however, "may be awarded in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." *See* O.C.G.A. § 51-12-5.1(b).

In Gooch v. Tudor, **674 S.E.2d 331 (2009)** The Court of Appeals found that there was sufficient evidence to award punitive damages in a malicious prosecution claim. The court noted that the trial judge did not err when he found the Defendant Gooch's conduct marked by malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to consequences. Id.

## Conclusion

The Plaintiff contends that the STATE's intentional detaining and placing of the hold on Ms. Brown was malicious in nature; especially considering they were aware that she had committed no crime in the matter.

41

Additionally, the present Defendants' arguments fail in reference to the legal conclusion that probable cause existed; especially in the face of the criminal matter that was subject to a nolle prosequi on all counts; the Plaintiff having neither plead nor allocated to any of the dismissed charges.

Therefore, the Plaintiff requests

    a. that the Court deny the 12b motion to dismiss on all;

    b. That the Court keep and maintain any and all state and federal claims including but not limited to any 1983 actions;

Submitted November 9, 2020,

/ss/Kamau K. Mason
Kamau K. Mason, Esq. for Plaintiff 823438

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia GA 30038
Phone: 678.464.4618
Fax:    678.526.5310
kkmason@yahoo.com

/ss/C. Victor Long
C. Victor Long for Plaintiff 456950

Office of C. Victor Long
PO Box 310928
Atlanta, GA 30331
attjud@bellsouth.net

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TASHON BROWN,

Plaintiff,

v.

CIVILACTION FILE NO. 4:20 CV 179 MLB

DETECTIVE REED
individual and professional;
CAPTAIN PEYTON individual and
professional; and JOHN DOES et al

## MOTION FOR ADDITIONAL PAGES

COMES NOW Plaintiff and files this Plaintiff's Consolidated Brief in

Opposition the 12b Motion to Dismiss.  This brief exceeds the required limit of 25

pages. The Plaintiff respectfully requests that the Court allow for the addition of 20

Additional pages as the Court has required the Plaintiff to examine every element

of the present claim and provide analysis.

Submitted November 9, 2020

/ss/Kamau K. Mason
Kamau K. Mason, Esq. for Plaintiff

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia GA 30038
Phone: 678.464.4618
Fax:     678.526.5310
kkmason@yahoo.com

43

/ss/C. Victor Long
C. Victor Long for Plaintiff

Office of C. Victor Long
PO Box 310928
Atlanta, GA 30331
attjud@bellsouth.net

## **CERTIFICATE OF COMPLIANCE**

This document certifies that the above response complies with the Federal

Rules of Civil Procedure.

The Document Font size is 14 Point Times New Roman.

A proper Motion for Additional Pages to file in excess of 25 pages is attached

herein.

Submitted November 9, 2020

/ss/Kamau K. Mason
Kamau K. Mason, Esq. for Plaintiff

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia GA 30038
Phone: 678.464.4618
Fax:    678.526.5310
kkmason@yahoo.com

/ss/C. Victor Long
C. Victor Long for Plaintiff

Office of C. Victor Long
PO Box 310928
Atlanta, GA 30331
attjud@bellsouth.net