## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

Tashon Brown,

                Plaintiff,

                            Case No. 4:20-cv-179-MLB

v.

Detective Chris Reed, et al.,

                Defendants.

_____/

## **ORDER**

Plaintiff Tashon Brown claims she was imprisoned and prosecuted without probable cause.  (Dkt. 20.)  Defendants Chris Reed and Craig Peyton move to dismiss.[1]  (Dkt. 21.)  The Court grants in part and denies in part that motion.

## I.   **Background**

In the early morning of June 24, 2018, Plaintiff received a text from a friend named Laryan Walker requesting her to meet him.  (Dkt. 20 ¶ 6.)

---

[1] Plaintiff's amended complaint refers to Defendant Peyton Walker as "Peyton" and "Payton."  (*See generally* Dkt. 20.)  The Court refers to him as "Defendant Peyton."  Plaintiff also sued John Doe 1–5 but has not identified those people.  (*See id.*)

Between 4:30 and 5:00 a.m., Plaintiff met Mr. Walker at his grandmother's residence. (*Id.* ¶ 7.) When they first got there, Mr. Walker suggested Plaintiff leave her vehicle in front of the grandmother's house, but she chose to leave it at her sister's residence. (*Id.* ¶ 8.) She drove to her sister's and waited for Mr. Walker. (*Id.* ¶¶ 9–10.) Plaintiff heard several gun shots. (*Id.* ¶ 10.) Mr. Walker drove up a short time later and motioned for Plaintiff to get into his car. (*Id.* ¶ 11.) She did. (*Id.*) Plaintiff told Mr. Walker about the gun shots, and Mr. Walker responded, "I had to shot a guy, he tried to get into my car." (*Id.* ¶ 12.)

Plaintiff and Mr. Walker drove to a nearby park. (*Id.* ¶ 13.) While sitting in the car, Mr. Walker said they needed to split up because he believed his car was "hot." (*Id.*) He asked her to meet him back at her sister's home. (*Id.* ¶ 14.) Before they separated, Mr. Walker asked Plaintiff to take his backpack. (*Id.*) He explained that police would not stop a woman carrying a backpack but would stop him if they saw him with it. (*Id.*) She agreed to take the bag. (*Id.* ¶ 15.) She and Mr. Walker left separately and took different routes to Plaintiff's sister's home. (*Id.*) By the time she arrived, Mr. Walker was already there. (*Id.* ¶ 15.)

Plaintiff gave Mr. Walker the backpack, got in her car, and left—all without looking in the backpack. (*Id.* ¶¶ 15–17.)

On June 25, 2018, Plaintiff visited her sister's house. (*Id.* ¶ 18.) While she was there, the Cedartown police served a search warrant, looking for some of Mr. Walker's clothing. (*Id.* ¶¶ 18, 20.) Mr. Walker was also at the house. He told Plaintiff that, if the police asked her any questions about the previous night, she should say she was with Mr. Walker and he had nothing to do with the shooting. (*Id.* ¶ 19.) Police also served a search warrant at a home located at 501 Line Street (although Plaintiff does not describe the significance of this address). (*Id.* ¶ 20.) The officers seized two t-shirts (Plaintiff does not say from where) and videos of Mr. Walker buying cigarettes and lottery tickets (at a place Plaintiff refers to simply as "Grand's"). (*Id.* ¶ 20.)

On the same day, Defendant Reed interviewed Mr. Walker at the Cedartown Police Department. (*Id.* ¶ 21.) During the interview, Defendant Reed received information from another police officer that an informant told police "Boo" Walker shot a guy. (*Id.* ¶¶ 22–23.)

On June 28, 2018, Agent Rowlen and Defendant Peyton interviewed Plaintiff at the Cedartown Police Department. (*Id.* ¶ 26.)

According to Plaintiff, Agent Rowlen and Defendant Peyton drafted a police report summarizing Plaintiff's statement. According to that report, Plaintiff told the police that, on the morning of the murder, she heard gunshots while waiting for Mr. Walker at her sister's house, Mr. Walker told her he "got into it with a white guy and had to," and Mr. Walker then gave her a handgun inside a backpack. (*Id.*) The report further explained that Plaintiff said, after driving from her sister's house to a park in Mr. Walker's car, she and Mr. Walker split up, with her taking the handgun in the backpack. (*Id.*)

In her complaint, Plaintiff alleges that Defendant Reed appeared before a magistrate judge on June 29, 2018 and "swore falsely to obtain arrest warrants for Plaintiff." (*Id.* ¶ 28.) She says Defendants knew from their investigation that Mr. Walker had murdered the victim, that Plaintiff was not with him when the shooting happened, and that Plaintiff had nothing to do with the murder. (*Id.* ¶ 33.) Nevertheless, she says Defendants obtained warrants charging her with felony murder,

4

aiding and abetting aggravated assault, and related crimes.  (*Id.* ¶¶ 28,

31, 32–37.)[2]

Plaintiff says she was arrested on June 29, 2018 in Polk County on

unrelated charges from nearby Floyd County.  Plaintiff was transferred

---

[2] "Notwithstanding [Plaintiff's] description of the Cedartown warrants in her [c]omplaint," Defendants attached the actual warrants to their motion to dismiss.  (Dkt. 21-2.)  They show Defendant Reed obtained warrants charging Plaintiff with felony murder, felony malice murder, aggravated assault, and possession of a firearm during the commission of a crime of violence based on Defendant Reed's allegation Plaintiff aided and abetted Mr. Walker in the murder of his victim by driving Mr. Walker at the time of the crime.  (*Id.* at 4–7.)  He also obtained warrants charging her with felony hindering and felony tampering based on evidence she took the handgun from Mr. Walker in order to prevent his apprehension.  (*Id.* at 2–3.)  A "district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005); *see also* Fed. R. Civ. P. 12(d).  But a district court may consider documents referenced in the complaint, even if they are not physically attached, if the documents are central to the complaint and no party questions their authenticity.  *See Day*, 400 F.3d at 1276.  A document is central to a complaint when it is a "necessary part of [the plaintiff's] effort to make out a claim." *Id.*; *see also Bryant v. Citigroup Inc.*, 512 F. App'x 994, 995 (11th Cir. 2013) ("Although ordinarily nothing beyond the face of the complaint and the attached documents are considered in analyzing a motion to dismiss, [courts] make an exception where the plaintiff refers to a document in his complaint, it is central to his claim, the contents are not disputed, and the defendant attaches it to his motion to dismiss.").  Under those circumstances, the district court may consider the documents without converting the motion to dismiss into a motion for summary judgment.  *See Day*, 400 F.3d at 1275–76.  While the arrest warrants likely satisfy these requirements, the Court's consideration of the warrants would not change the Court's holdings.

to Floyd County to face those charges. (*Id.* ¶ 31.) She says Defendants used the falsely obtained Polk County arrest warrants to place a hold on her in Floyd County, thus preventing her release after she resolved those charges and causing her to remain in custody. (*Id.* ¶¶ 32, 34–37.)

Plaintiff's mother and father went to the Cedartown Police Department and spoke with Defendant Peyton. Plaintiff contends Defendant Peyton admitted his department knew Plaintiff had not killed anyone but "needed to hold her to help them with their case against Mr. Walker." (*Id.* ¶ 42.)[3] Plaintiff alleges Defendant Peyton said there was nothing he could do to help Plaintiff until she was transferred back to the Polk County jail.

On July 12, 2018, Plaintiff was returned to Polk County jail and booked into that jail on the arrest warrants Defendant Reed obtained on June 29, 2018. (*Id.* ¶ 43.) On July 17, 2018, on Defendants' testimony, the Grand Jury indicted Plaintiff on seven felony charges: (1) malice murder; (2) felony murder; (3) felony murder; (4) felony murder; (5) aggravated assault; (6) aggravated assault; and (7) possession of

---

[3] The Court notes there are two paragraphs numbered as "42." The Court is referring to the first paragraph numbered "42."

firearm during commission of a felony.  (*Id.* ¶ 44.)  Plaintiff remained in jail until she made bond on September 11, 2018.  (*Id.* ¶ 45.)  Before being released, Plaintiff gave a written statement of the facts of the case to Defendant Reed.  (Dkt. 20-3.)

Plaintiff remained under prosecution until May 20, 2020 when the Polk County District Attorney agreed to a nolle prosequi dismissal of all charges against Plaintiff.  (Dkt. 20 ¶ 48.)  Before doing so, the court held a proffer hearing in which Plaintiff testified about the events surrounding the murder.  (Dkt. 20-2.)  After the proceeding, the judge signed the request for nolle prosequi which stated that it was requested "for the following reason: Defendant shall provide truthful testimony regarding case 18-CR-853 consistent to that provided to her attorney." (Dkt. 20-1.)

On June 27, 2020, Plaintiff filed her complaint in the Superior Court of Polk County.  (Dkt. 1-2.)  On July 29, 2020, Defendants removed the case to this Court.  (Dkt. 1.)  After Defendants moved to dismiss Plaintiff's complaint, the Court allowed Plaintiff an opportunity to amend her complaint.  (Dkt. 18.)  On October 2, 2020, Plaintiff filed an amended complaint.  (Dkt. 20.)  The operative complaint asserts five counts against

Defendants in their individual capacities: (1) false imprisonment; (2) federal § 1983 malicious prosecution; (3) intentional infliction of emotional distress; (4) state law malicious prosecution; and (5) punitive damages.[4]   (*Id.*)   Defendants move to dismiss Plaintiff's amended complaint for failure to state a claim.  (Dkt. 21.)

## II.   Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  At the motion to dismiss stage, "all well-pleaded facts are

---

[4] In the caption of Plaintiff's response to Defendants' motion to dismiss, she addresses Defendants as "Detective Reed individual and professional; Captain Peyton individual and professional." (Dkt. 23 at 1.) In the introductory paragraph, Plaintiff also states that she "files this Response to the Defendants' in their individual and professional/official capacities." (*Id.*) Plaintiff's amended complaint, however, does not allege any official-capacity claims and she cannot amend her claims through a response to a motion to dismiss. *See Bennett v. Lynch*, No. 4:11-CV-30, 2011 WL 13138102, at *1 n.1 (N.D. Ga. Dec. 29, 2011) (finding that a plaintiff cannot amend a pleading through statements contained in a response brief).

accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  Even so, a complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (finding that a court's "duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This so-called "plausibility standard" is not a probability requirement.  *Id.*  But the plaintiff must allege enough facts so that it is reasonable to expect that discovery will lead to evidence supporting the claim.  *Id.*

Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case. *Twombly*, 550 U.S. at 556.; *see also AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) ("[N]otice pleading does not require a plaintiff to specifically plead every element of his cause of action, [but] a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." (internal quotation marks omitted)).

A "district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day*, 400 F.3d at 1275–76; *see also* Fed. R. Civ. P. 12(d). But a court may consider exhibits attached to the complaint. *See* Fed. R. Civ. P. 10(c). And the exhibits a plaintiff attaches to its complaint governs when they contradict the allegations of the complaint. *See Griffin Indus.*, 496 F.3d at 1206.

## III.   Discussion

### A.   Excess Pages

Plaintiff's response to Defendants' motion to dismiss is 42 pages in length and contains a motion to file excess pages at the end of the document.  (Dkt. 23.)  This is the second time Plaintiff has flouted the Court's Standing Order on motions for excess pages.  (*See* Dkt. 18.) Plaintiff's previous page extension request provided almost no justification for the extension other than "[a]dditional pages resulted from the Plaintiff attempting to examine every element of the Defendants' motion [to dismiss]."  (Dkt. 14-1 at 35.)  Her newest request similarly contends an extension is needed "as the Court has required the Plaintiff to examine every element of the present claim and provide analysis."  (Dkt. 23 at 43.)

As explained before, section (g) of the Court's Standing Order Regarding Civil Litigation provides, in full:

> The Court generally will not approve extensions of page limitations.  Parties seeking an extension of the page limit must do so at least five (5) days in advance of their filing deadline and should explain with specificity the reasons necessitating the extension.  If a party files a motion to extend the page limit at the same time his or her brief is due, the extension request will be denied absent a compelling and unanticipated reason for violating this rule.  The Court will

> not consider any arguments made in pages that exceed the
> Local Rules' requirements.

(Dkt. 4 at 3.)  Plaintiff filed her page extension request simultaneously with her non-conforming filing and provided no reason for violating the Standing Order.  Her motion contains hardly any basis for an extension and certainly no "specificity" for her request.  It is hard to understand why Plaintiff committed the same violation of the rules in the exact same manner.  The Court thus denies the page extension request, although that has limited impact on Plaintiff as she summarizes most of her arguments in the first 25 pages (and the Court actually read the entire filing).

The Court held a hearing on June 21, 2021 specifically to address Plaintiff's failure to follow the rules.  The Court ordered Plaintiff to attend the hearing to ensure she knew about her lawyers' missteps and understood she would suffer from their further noncompliance.  The Court reiterates the warning it gave Plaintiff at that hearing—the Court **will strike in its entirety** her next filing that fails **in any manner** to comply with the Standing Order and Local Rules.

**B.    False Imprisonment**

In Count 1, Plaintiff asserts false imprisonment under Georgia law. (Dkt. 20 at 22–23.)[5]  "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty."  O.C.G.A. § 51-7-20.[6]  "In an action to recover damages for . . . false imprisonment the only essential elements are the arrest or detention and the unlawfulness thereof."  *Miller v. Grand Union Co.*, 552 S.E.2d 491, 494 (Ga. Ct. App. 2001).  Plaintiff claims Defendants falsely imprisoned her in the Floyd County jail when they used the fraudulently obtained warrants to place a hold on her and prevent her release on the unrelated charges.  (Dkt. 20 ¶ 55.)[7]  She also claims Defendants falsely imprisoned her when they caused her to be returned to Polk County and detained her there when they had no probable cause

---

[5] Just as Plaintiff erroneously included two paragraphs 42, she included two paragraphs numbered as "54" and two paragraphs numbered as "55." The Court simply cites to pages 22 through 23 to avoid confusion.

[6] Plaintiff's amended complaint asserts a claim under § 16-5-41 for false imprisonment.  (Dkt. 20 at 22.)  That is Georgia's statute on the crime of false imprisonment.  The Court assumes Plaintiff meant to cite § 51-7-20, the code provision for the tort of false imprisonment—particularly because Plaintiff lists the two required elements of a false imprisonment tort claim in her response.  (Dkt. 23 at 25.)

[7] The Court refers to the first paragraph numbered "55."

13

to file criminal charges against her. (*Id.* ¶ 54.)[8] Defendants contend Plaintiff's claim for false imprisonment fails because Plaintiff was arrested pursuant to a warrant and the "hold" on Plaintiff with the Floyd County Sheriff's Department was placed after arrest warrants were issued. (Dkt. 21-1 at 14.) Plaintiff's only response is that "the acts of the officers were malicious and enacted under color of title."[9] (Dkt. 23 at 25.)

Georgia law recognizes three arrest-related torts: "(1) false imprisonment, which is unlawful detention without judicial process, or without the involvement of a judge at any point; (2) false or malicious arrest, which is detention under process of law; and (3) malicious prosecution, which is detention with judicial process followed by prosecution." *McClendon v. Harper*, 826 S.E.2d 412, 417–18 (Ga. Ct. App. 2019) (internal quotations and citations omitted). "The efficacy of each depends upon the particular facts of a situation and who is being sued. Only one, if any, will lie as to a particular defendant in particular circumstances." *Reese v. Clayton Cnty.*, 363 S.E.2d 618, 619 (Ga. Ct. App.

---

[8] The Court refers to the second paragraph numbered "54."

[9] It is unnecessary to show malice and lack of probable cause—it is only necessary to show that there was an imprisonment and that the imprisonment was unlawful. *See Scott Hous. Sys., Inc. v. Hickox*, 329 S.E.2d 154, 157 (Ga. Ct. App. 1985).

1987).  "The 'key distinction' between false arrest and false imprisonment 'is whether the person was detained using a warrant or not.' "  *Smith v. Wal-Mart Stores E., LP*, 765 S.E.2d 518, 521 (Ga. Ct. App. 2014) (quoting *Ferrell v. Mikula*, 672 S.E.2d 7, 10 (Ga. Ct. App. 2008)).  According to Georgia law, "[a]n action for false imprisonment will lie where a person is unlawfully detained under a void process, or under no process at all," but cannot "be maintained where the process is valid, no matter how corrupt . . . the motives of the person suing out the process or how unfounded the imprisonment may be."  *Ridgeview Inst., Inc. v. Handley*, 481 S.E.2d 531, 534 (Ga. Ct. App. 1997) (internal quotation omitted).

As a result, a plaintiff cannot maintain a cause of action for false imprisonment when his or her arrest arose from a judicially-authorized arrest warrant, regardless of claims that officers lied to obtain that warrant.  *See Butler v. Gwinnett Cnty.*, No. 1:15-CV-3289, 2016 WL 10649204, at *10 (N.D. Ga. June 3, 2016) ("[The plaintiff's] false imprisonment claim accordingly must be dismissed, because a judge was involved in her detention through the issuance of a warrant."); *Lagroon v. Lawson*, 759 S.E.2d 878, 884 (Ga. Ct. App. 2014) (finding because the plaintiff was arrested pursuant to a warrant and then charged with

criminal offenses pursuant to a special presentment by the grand jury, the trial court did not err in dismissing the plaintiff's false imprisonment claim).[10]

Plaintiff claims she was falsely imprisoned when, after she was due to be released on the Floyd County warrant, Defendants caused her to be detained based on the Polk County warrants. She alleges her false imprisonment continued after she was transferred to Polk County and charged pursuant to the Polk County warrants. (Dkt. 20 ¶ 55.)[11] She admits all of that arose from the arrest warrants Defendant Reed

---

[10] *See also Primas v. Saulsberry*, 262 S.E.2d 251, 252 (Ga. Ct. App. 1979) ("An imprisonment resulting from an arrest under a valid warrant will not give a right of action for false imprisonment."); *Franklin v. Consol. Gov't of Columbus*, 512 S.E. 2d 352, 355 (Ga. Ct. App. 1999) ("where the arrest is by valid process regularly sued out, action for malicious prosecution is the only remedy"); *Fleming v. U-Haul Co. of Ga.*, 541 S.E.2d 75, 77 (Ga. Ct. App. 2000) ("An action for false imprisonment under OCGA § 51–7–20 cannot be maintained where the arrest was carried out pursuant to a valid warrant, no matter how corrupt the motives of the prosecutor or how unfounded the imprisonment may be. Where criminal process, valid on its face, has been maliciously sued out without probable cause, an action for malicious arrest or malicious prosecution is the only authorized remedy."); *Wright v. Walmart Inc.*, No. 1:19-cv-2580, 2020 WL 4938367, at *3 (N.D. Ga. Apr. 1, 2020) (dismissing the plaintiff's false imprisonment claim because his "allegations, and the evidence attached to his Complaint, show[ed] [the defendant] arrested him pursuant to a warrant").

[11] The Court refers to the first paragraph 55.

obtained (allegedly based on false information).  (*Id.* ¶ 54.)[12]  Because Plaintiff pleads that she was detained pursuant to arrest warrants (either to place the detainer or to initiate criminal charges upon her return to Polk County), she cannot maintain a claim for false imprisonment as "detention effectuated pursuant to procedurally valid process, such as an arrest warrant, is not 'unlawful.' " *Franklin*, 512 S.E.2d at 355.

Plaintiff's only relevant allegations are that Defendants had no probable cause to file criminal charges and Defendant Reed swore falsely to obtain arrest warrants for Plaintiff.  (*Id.* ¶¶ 54, 28.)[13]  But those allegations accepted as true do not change the fact that she was arrested by valid process. (Dkts. 20 ¶ 26; 20-2.)  Plaintiff's allegations (accepted as true) are insufficient to state a claim for false imprisonment, and the Court grants Defendants' motion to dismiss Count I.

### C.    Fourth Amendment Malicious Prosecution

Plaintiff claims Defendants violated her constitutional rights by seizing and detaining her and subjecting her to criminal prosecution with

---

[12] The Court refers to the second paragraph 54.
[13] The Court refers to the second paragraph 54.

malice and without probable cause.   (Dkt. 20 ¶ 57.)   The heart of Plaintiff's claim alleges Defendants obtained arrest warrants charging her with two counts of felony murder, felony aggravated assault, and felony possession of a firearm during the commission of a crime by falsely alleging she aided Mr. Walker in the murder of his victim by driving Mr. Walker's car at the time of the shooting.   Defendants do not—at this point—challenge Plaintiff's core contention that Defendant Reed falsely averred in several of the warrants that she was driving Mr. Walker's car at the time of the shooting despite knowing this was not true.[14]   They contend nevertheless there was probable cause to support the warrants for hindering and tampering with evidence (since the affidavits for those warrants did not allege her presence in the car) and argue they are thus protected by qualified immunity.[15] (Dkt. 21-1 at 15.)

---

[14] Perhaps that is an issue that will be in dispute at summary judgment. But, at this point, the Court accepts Plaintiff's contention that Defendant Reed knew Plaintiff was not driving the car at the time of the shooting but falsely averred that she was.

[15] The argument that there was probable cause to support the hindering and tampering charges is in regards to the second step of the qualified immunity analysis: whether the unlawfulness of their conduct was clearly established at the time.   The Court will address that below.   But first, the first step.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). An official asserting this defense must show that he "engaged in a discretionary function when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

Plaintiff does not dispute that Defendants acted within their discretionary authority, so she bears the burden of showing they are not entitled to qualified immunity. To do this, she must show "(1) the [D]efendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id*. To make this showing, the Plaintiff must demonstrate "the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that every reasonable official would have understood that what he [or she] is doing violates the Constitutional right at issue." *Gates*, 884 F.3d at 1302. "The critical inquiry is whether the law provided [defendants] with fair warning that their conduct violated the [Constitution]." *Coffin*

*v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).  "It is . . . appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right."  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

### 1.   The Constitutional Violation

Malicious prosecution is "a violation of the Fourth Amendment and [a] viable constitutional tort under § 1983."  *Blue v. Lopaz*, 901 F.3d 1352, 1357 (11th Cir. 2018).  To maintain a claim of malicious prosecution, Plaintiff must overcome two hurdles.  First, she must prove that she suffered a seizure pursuant to legal process that violated the Fourth Amendment.  *See Williams v. Aguirre*, 965 F.3d 1147, 1157–59 (11th Cir. 2020); *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004), *abrogated on other grounds by Aguirre*, 965 F.3d 1147.  This burden requires her to "establish (1) that the legal process justifying [her] seizure was constitutionally infirm and (2) that [her] seizure would not otherwise be justified without legal process."  *Aguirre*, 965 F.3d at 1165.  Second, Plaintiff must satisfy "the elements of the common law tort of malicious prosecution."  *Id.* at 1157 (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285

(11th Cir. 2019)).   To establish common-law malicious prosecution, a plaintiff must show: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Blue*, 901 F.3d at 1357.

Courts "employed a two-part test to determine whether a misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment. First, [they] ask whether there was an intentional or reckless misstatement or omission. Then, [they] examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Paez. v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019).   Allegations that a judge's determination of probable cause for an arrest warrant was predicated on an officer's knowingly or recklessly false statements asserts a violation of the Fourth Amendment. *Aguirre*, 965 F.3d at 1158; *Paez*, 915 F.3d at 1278 (warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the truth if inclusion of the omitted facts would have prevented a finding of probable cause).   Such allegations

21

concede the existence of legal process but allege the lack of probable cause as required by the Fourth Amendment.

Plaintiff's allegations are sufficient to state a claim under the Fourth Amendment to be free from an unreasonable seizure as a result of a malicious prosecution. Plaintiff says Defendants maliciously obtained arrest warrants charging her with assault, murder, and felony murder knowing she was innocent of those charges. Specifically, she alleges Defendant Reed obtained the Polk County warrants by falsely alleging she was with Mr. Walker at the time of the shooting when he knew she was not with him and that all Defendants, knowing there was no probable cause, used the warrants to place a detainer and continue Plaintiff's incarceration at Floyd County when she was otherwise eligible for release from that warrant. She further contends that, absent Defendant Reed's false allegation that she was driving the car at the time of the murder, there was no probable cause to charge her with felony murder or the related charges.[16]

_____

[16] The Court acknowledges Plaintiff only alleges Defendant Reed made false statements to a magistrate judge, but she seems to argue Defendant Peyton worked with Defendant Reed to commit a constitutional violation. Plaintiff generically alleges ***Defendants*** used the warrants to get the

Plaintiff also contends that, as a result of the trumped up charges, the Defendants caused her to be detained from the time she was eligible for release on the Floyd County warrant and continuing until after she was returned to Polk County.  She does a terrible job of providing dates in her complaint but clearly alleges a detention in Polk County on the charges from at least July 12, 2018 until her indictment on July 17, 2018 and then continuing until she posted bond in September 2018.  (Dkt. 20 ¶¶ 43–45.)  By any account, this detention was far too long to be justified without legal process.  *Aguirre*, 965 F.3d at 1167 (citing *Cnty. of Riverside*

---

detainer Defendant Peyton was the one who interviewed her, and Defendant Peyton told Plaintiff's parents the officers knew Plaintiff was not involved in the murder but needed to hold her to help their case against Mr. Walker.  (Dkt. 20 ¶¶ 60, 26, 42.)  At this stage, the Court accepts Plaintiff's allegations against Defendants and is unwilling to conclude Defendant Peyton cannot be held personally liable for his purported involvement, particularly because Defendants do not distinguish between themselves. (*See generally* Dkt. 21-1 at 15–21.)  *See Pombert v. Glock, Inc.*, 171 F. Supp. 3d 1321, 1337 (N.D. Ga. 2016) (unwilling to conclude a defendant cannot be held personally liable because, based on the plaintiff's allegations, the defendant took part in the initiation of the plaintiff's prosecution, his purpose in the conspiracy was to initiate the malicious prosecution, and he was heavily involved in the investigation and eventual indictment); *but cf. Perry v. Brooks*, 332 S.E.2d 375, 378 (Ga. Ct. App. 1985) (holding because two defendants took no personal action with regard to the initiation of the prosecution, and after the prosecution only acted in their capacity as agents for the defendant, they could not be held personally liable for malicious prosecution).

*v. McLaughlin*, 500 U.S. 44, 57 (1991) (presumption that probable cause determination for warrantless arrest within 48 hours passes constitutional muster)).

### 2.   The Violation Was Clearly Established

Defendants argue that, regardless of the four arrest warrants at the heart of Plaintiff's claim, they had probable cause to support the arrest warrants for hindering and tampering with evidence.[17]   This is a

---

[17] Georgia law states a person commits the crime of hindering when the person, "with intention to hinder the apprehension or punishment of a person whom he knows or has reasonable grounds to believe has committed a felony . . . (1) harbors or conceals such person; or (2) conceals or destroys evidence of the crime.  O.C.G.A. § 16-10-50(a).  Likewise, a person commits the crime of tampering with evidence when, "with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence . . ." O.C.G.A. § 16-10-94.  During a June 28, 2018 interview, Plaintiff stated Mr. Walker gave her a handgun in a backpack while telling her he shot someone.  (Dkt. 20 ¶ 26.)  She also informed them she and Mr. Walker split up with Plaintiff taking the backpack with the handgun.  (*Id.*)  She did this to help him avoid apprehension.  During the proffer hearing, Plaintiff also testified Mr. Walker told her he shot somebody, they drove to the park where Mr. Walker gave Plaintiff a backpack which Plaintiff understood to carry drugs and a gun, and Plaintiff carried the backpack because she was a female so she was less likely to be stopped by the police.  (Dkt. 20-2 at 11:2–3, 12:15–16, 13:12–23, 14:1–11.)  Plaintiff thus concealed evidence from the murder after Mr. Walker told her he shot a man to help him avoid suspicion and detection by the police.  *See Griffin Indus.*, 496 F.3d at 1205–06 (finding that a court's "duty to accept the

reference to the so-called "any-crime" rule.  That rule "insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred."  *Aguirre*, 965 F.3d at 1158 (emphasis in original).  It applies in false arrest claims.  But in July 2020, the Eleventh Circuit explicitly abolished the any-crime rule for malicious prosecution claims. *See id.* at 1159–64.  Instead of allowing one valid basis for an arrest to shield other invalid bases, in a malicious prosecution case, probable cause must be measured with respect to every crime charged in the warrants at the time the warrants issued.  *Id.*

The Court of Appeals referred to the application of the any-crime rule to malicious prosecution claims prior to its July 2020 decision as "unsettled" and "unresolved."  *Id.* at 1159.  It explained courts in the circuit had assumed the any-crime rule applied to malicious prosecution, but "only under the erroneous premise that a seizure without legal process, which implicates the rule, could sustain a claim of malicious

---

facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations").  The Court concludes there was probable cause to arrest her for hindering and tampering.

prosecution." *Id.* From this, Defendants argue there was uncertainty in June 2018 as to whether the any-crime rule applied to malicious prosecution claims. As a result, they say they did not violate clearly established law and are entitled to qualified immunity. (Dkt. 21-1 at 16.)

Defendants focus the clearly established analysis too narrowly, focusing not on whether their conduct violated clearly established law but on whether a plaintiff can recover for such a violation in the context of other conduct that does not violate the constitution. The Eleventh Circuit, however, has "never wavered about the prohibition of misstatements in warrant applications." *Aguirre*, 965 F.3d at 1169; s*ee also id.* at 1165 (finding a plaintiff can state a § 1983 claim by alleging (1) "the officer who applied for the warrant should have known that his application failed to establish probable cause" or (2) "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant"); *Wood*, 323 F.3d at 882 (holding that the absence of probable cause is an element required for a malicious prosecution claim under § 1983); *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (holding that "the Constitution prohibits an officer from making perjurious or

recklessly false statements in support of a warrant"). Indeed, in *Aguirre*, the Court concluded the defendants violated clearly established law by lying in an arrest warrant despite announcing the inapplicability of the any-crime rule in the same opinion.

Every reasonable officer in Defendants' situation would have known that intentionally making false statements in an application for Plaintiff's arrest violates her Constitutional rights.[18]

---

[18] While Defendants do not invoke arguable probable cause, the Court feels compelled to address such an argument. While prior Eleventh Circuit precedent applied the arguable probable cause standard to claims of malicious prosecution when the officers raised the defense of qualified immunity, *see, e.g.*, *Grider*, 618 F.3d at 1257, that is no longer the proper inquiry. The Court in *Aguirre* makes clear that the arguable probable cause inquiry has no place in the malicious prosecution context because the inquiry does not turn on the "facts and circumstances within the arresting officer's knowledge." 965 F.3d at 1158; *see also Broes v. Darraugh*, No. 2:19-CV-111-RWS, Dkt. 98 at 23–24 (N.D. Ga. Aug. 26, 2020). Moreover, confusion over the proper standard for qualified immunity does not mean the right was not clearly established. *Aguirre*, 965 F.3d at 1169 ("To be sure, our precedents on malicious prosecution were unsettled when the officers accused [the plaintiff], but those doctrinal tensions concerned only the relationship between Fourth Amendment violations and malicious prosecution, the vehicle that we have held controls liability for these violations. We have never wavered about the prohibition of misstatements in warrant applications." (internal citation omitted)).

### 3.   Plaintiff's Favorable Termination Allegations Are Sufficient

As part of her Fourth Amendment malicious prosecution claim, Plaintiff must show the falsely filed charges terminated in her favor. *Blue*, 901 F.3d at 1357.   The law of "favorable termination" in the constitutional context has also undergone recent change—or perhaps great clarification.   Long ago, the Eleventh Circuit held that "a claim of malicious prosecution accrues when the prosecution against [a plaintiff] terminates in his [or her] favor." *Whiting v. Traylor*, 85 F.3d 581, 585–86 (11th Cir. 1996).   But the Court of Appeals never specifically addressed whether the favorable-determination requirement meant the termination must suggest the plaintiff's innocence.   *See generally Uboh v. Reno,* 141 F.3d 1000, 1005–06 (11th Cir. 1998).   So, it was unclear whether the withdrawal of criminal charges pursuant to a compromise or agreement between a prosecutor and a defendant constitutes favorable termination so as to support a claim for malicious prosecution.   (Dkt. 21-1 at 18 (quoting *Uboh*, 141 F.3d at 1004).

The Eleventh Circuit answered this question in August 2020, holding "a plaintiff can satisfy the favorable-termination requirement by proving that the prosecution against him [or her] formally ended in a

manner not inconsistent with his [or her] innocence on at least one charge that authorized his [or her] confinement." *Laskar v. Hurd*, 972 F.3d 1278, 1293 (11th Cir. 2020); *see also Luke v. Gulley*, 975 F.3d 1140, 1144–45 (11th Cir. 2020) (applying the favorable-termination holding established in *Laskar*).   The *Laskar* Court found that "the favorable-termination element of malicious prosecution is not limited to terminations that affirmatively support the plaintiff's innocence. Instead, the favorable-termination element requires only that the criminal proceedings against the plaintiff formally end in a manner not inconsistent with [the plaintiff's] innocence on at least one charge that authorized his [or her] confinement." *Id.* at 1295.  A formal end to criminal proceedings will thus satisfy this standard unless "the prosecution ends in the plaintiff's conviction on or admission of guilt to each charge that justified his seizure." *Id.*

Plaintiff alleges she was innocent of the charges filed against her, and the district attorney dismissed the charges, only requesting that she testify truthfully to the information she had provided through her attorney.  (Dkt. 20 ¶ 49.)   Nothing in Plaintiff's allegation or the transcript from the Nolle Prosequi transcript show the prosecution

29

against Plaintiff formally terminated with a conviction or Plaintiff's admission of guilt. She has thus alleged favorable termination as defined by the Eleventh Circuit.

Defendants say that change or clarification of the law does not matter. They say, regardless of whether the resolution of the charges against Plaintiff would today be considered favorable, the law was not so clear back in 2018. As a result, they say they are protected by qualified immunity. (Dkt. 21-1 at 15.) Again, Defendants conflate limitations on a putative plaintiff's ability to maintain a malicious prosecution claim with the clear establishment of constitutional violations. "The favorable-termination requirement functions as a rule of accrual, not as a criterion for determining whether a constitutional violation occurred." *Laskar,* 972 F.3d at 1278. While it may bar some plaintiffs who suffer Fourth Amendment violations from moving forward with malicious prosecution claims, the favorable-termination requirement does not diminish the Fourth Amendment, particularly the protection it provides against unlawful seizures based on knowingly false material statements in an arrest warrant. As such, uncertainty regarding the unlawful-termination element of a common law malicious prosecution claim does

30

not equate to uncertainly as to the underlying Fourth Amendment violation. As previously explained, every officer would have known the intentional inclusion of false statements to obtain an arrest warrant violated an accused's constitutional rights. Indeed, the Court of Appeals in *Laskar* determined the arresting officers violated clearly established law by knowingly including false statements in an arrest warrant and thus were not entitled to qualified immunity from plaintiff's malicious prosecution claim in the very opinion it clarified the uncertainty surrounding the favorable-termination requirement of a malicious prosecution claim.

Plaintiff has satisfied her burden of showing Defendants are not entitled to qualified immunity on her malicious prosecution claim based on the allegedly false Polk County warrants. The Court thus denies Defendants' motion to dismiss Count II.

## D.   Intentional Infliction of Emotional Distress

Plaintiff also sued for intentional infliction of emotional distress. (Dkt. 20 ¶¶ 59–62.) Plaintiff alleges Defendants' intentional and reckless conduct, including giving false statements to seek warrants and at the grand jury, was extreme and outrageous and it caused her to be

imprisoned, without probable cause, for more than seventy days.  (*Id.* ¶¶ 60–61.)  She alleges this conduct caused her extreme emotional distress and other injuries.  (*Id.* ¶ 62.)  Defendants argue this claim fails because "(1) there was probable cause for at least one criminal charge and therefore the conduct was not 'extreme and outrageous'; and (2) [Plaintiff] has not alleged sufficient facts (other than a legal conclusion) to plausibly show that any emotional distress was 'severe.' " (Dkt. 21-1 at 21.)

> Four elements must be present to support a claim of intentional infliction of emotional distress: (1) [t]he conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe.

*Reid v. Waste Indus. USA, Inc.*, 812 S.E.2d 582, 589 (Ga. Ct. App. 2018) (quoting *Sevcech v. Ingles Mkts.*, 474 S.E.2d 4, 7 (Ga. Ct. App. 1996)).  "To qualify as sufficiently 'extreme and outrageous' the conduct at issue 'must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' "  *Standard v. Falstad*, 779 S.E.2d 682, 686 (Ga. Ct. App. 2015) (quoting *Kaiser v. Tara Ford, Inc.*, 546 S.E.2d 861, 868 (Ga. Ct. App. 2001)).   "Whether a claim rises to the requisite level of

outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Frank v. Fleet Fin., Inc. of Ga.*, 518 S.E.2d 717, 720 (Ga. Ct. App. 1999).  But if "reasonable persons might find the presence of extreme and outrageous conduct and resulting severe emotion distress, the jury then must find the facts and make its own determination." *Yarbray v. S. Bell Tel. & Tel. Co.*, 409 S.E.2d 835, 838 (Ga. 1991).

"The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would [cause her to] exclaim 'Outrageous!' " *United Parcel Serv. v. Moore*, 519 S.E.2d 15, 17 (Ga. Ct. App. 1999).  "Only where the distress inflicted is so severe that no reasonable person could be expected to endure it does the law intervene." *Everett v. Goodloe*, 602 S.E.2d 284, 292 (Ga. Ct. App. 2004). Defendants contend the Court should dismiss Plaintiff's intentional infliction of emotion distress claim because "there was probable cause for at least one of the warrants."  (Dkt. 21-1 at 23.)

Defendants cite *Biven Software, Inc. v. Newman*, 473 S.E.2d 527 (1996), for the proposition that if someone acts with probable cause, the

conduct cannot be outrageous.  (Dkt. 21-1 at 23.)  *Biven*, however, did not involve any allegations that the defendant knowingly presented false testimony to a magistrate judge to obtain an arrest warrant.  *See Dunn v. Stewart*, No. 4:17-CV-134, 2018 WL 8369366, at *12 (N.D. Ga. Aug. 6, 2018) (finding that *Biven* was not instructive because there were no allegations "the defendant knowingly presented false testimony to the magistrate to obtain a finding of probable cause").  Plaintiff alleges Defendants caused her to be prosecuted by giving false statements to seek warrants and to the grand jury.  If she can prove her allegations, reasonable persons could conclude Defendants' conduct was extreme and outrageous.  *See Adams v. Carlisle*, 630 S.E.2d 529, 542 (Ga. Ct. App. 2006) ("[A] rational and impartial jury could conclude that [an appellee] relayed misleading or false information to the investigating officer, which constituted reckless conduct of an extreme and outrageous nature and consequently caused [the appellants] severe emotional distress."); *Dunn*, 2018 WL 8369366, at *12 (finding that the defendants' conduct, which included presenting knowingly false testimony to have the plaintiffs arrested, rose to the requisite level of extreme and outrageous to support an intentional infliction of emotional distress claim).

Regardless of the alleged nature of Defendant's conduct, Plaintiff's claim for intentional infliction of emotional distress fails because she does not allege sufficient facts to show any emotional distress was severe.  In Georgia, not only must Plaintiff have suffered emotional harm, but that harm must have also been "severe."  Georgia courts have held that

> [e]motional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable (person) could be expected to endure it.

*Southland Propane, Inc. v. McWhorter*, 720 S.E.2d 270, 277 (Ga. Ct. App. 2011) (alterations in original) (quoting *Abdul-Malik v. AirTran Airways, Inc.*, 678 S.E.2d 555, 560 (Ga. Ct. App. 2009) (internal quotation marks omitted)).  Plaintiff alleges Defendants' conduct caused her to suffer, and she will continue to suffer, "extreme emotional distress and other injuries." (Dkt. 20 ¶ 62.)  Under her claim for punitive damages, she also alleges she suffered and continues to suffer mental and emotional pain and suffering, humiliation, and embarrassment, and ridicule, scorn, and contempt.  (*Id.* ¶ 67.)  Defendants argue Plaintiff has not alleged sufficient facts to plausibly show that any emotional distress was "severe." (Dkt. 21-1 at 23.)  The Court agrees.  "Plaintiff's conclusory

35

allegations that she was naturally humiliated and embarrassed, that she was emotionally upset, and that she was damaged are insufficient to demonstrate the requisite severity for this claim." *Brooks v. Branch Banking and Tr. Co.*, 107 F. Supp. 3d 1290, 1302 (N.D. Ga. 2015). The Court does not suggest malicious prosecution can never cause severe emotional distress. Of course it can. Plaintiff, however, has not pled facts sufficient to establish that the fear, humiliation, and embarrassment she felt as a result of Defendants' conduct was so severe that no one should be expected to endure it. Her conclusory allegations are insufficient. *See also Giles v. Manser*, 757 F. App'x 891, 893 (11th Cir. 2018) ("While it is certainly true that improper imprisonment *can* produce severe emotional distress under Georgia law, the two cases [the plaintiff] cites do not establish that an allegation of improper imprisonment suffices to allege all the elements of [intentional infliction of emotional distress]. . . . Thus, to survive a motion to dismiss under Georgia [intentional infliction of emotional distress] law, [the plaintiff] was required to plead more than the conclusory allegation that he suffered [intentional infliction of emotional distress]."). The Court thus grants Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress.

### E.    Malicious Prosecution

In Count Four, Plaintiff brings a state law malicious prosecution claim, saying Defendants caused her to be seized and prosecuted without probable cause and with malice by preparing and signing criminal charges against her.  (Dkt. 20 ¶ 63.)  Under Georgia law, "[a] criminal prosecution which is carried on maliciously and without any probable cause and which causes damages to the person prosecuted shall give him a cause of action."  O.C.G.A. § 51-7-40.  "A person seeking to recover for malicious prosecution must show, among other things, that the prosecution was instigated without probable cause and with malice." *Carly Ray Indus., Inc. v. Mays*, 841 S.E.2d 100, 102 (Ga. Ct. App. 2020). "The elements of a malicious prosecution claim are: (1) prosecution for a criminal offense; (2) the prosecution instigated under a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff." *Jackson v. Kmart Corp.*, 851 F. Supp. 469, 472 (M.D. Ga. 1994).

Defendants contend this claim fails because (1) Plaintiff cannot show the prosecution terminated in her favor, and (2) there was probable cause for at least one of the warrants.  (Dkt. 21-1 at 24.)  Regarding

Defendants' first argument, Plaintiff alleges the State agreed to nolle prosequi the charges against her.  Plaintiff attached the Nolle Prosequi filing, which states that the state was seeking disposition "for the following reason: Defendant shall provide truthful testimony regarding case 18-CR-853 consistent to that provided to her attorney."  (Dkt. 20-1.)[19]

The general rule in Georgia is "the filing of a nolle prosequi by the prosecutor and dismissal of the action by the trial court constitutes prima facie a termination of the prosecution in favor of the person arrested." *Pombert*, 171 F. Supp. 3d at 1329.  Georgia courts, however, recognize an exception when "a nolle prosequi [is] obtained through compromise," which does "not constitute a prosecution terminating in the plaintiff's favor."  *Id.*; *see also Harris v. Wal-Mart Stores E., LP*, No. 1:11-cv-3406, 2013 WL 6795973, at *6 (N.D. Ga. Dec. 23, 2013) ("[W]hen the state dismisses a case because of an agreement and compromise between the parties, the prosecution has not terminated in favor of the party pursuing

---

[19] The Court also notes that at the beginning of the proffer hearing, the prosecutor stated, "after speaking with [Plaintiff's attorney] and understanding what [Plaintiff] is wanting to say, the State would be in a position to nolle prosequi the case against her."  (Dkt. 20-2 at 3:15–18.)

a malicious prosecution claim."); *McDaniel v. Yearwood*, No. 2:11-cv-165, 2012 WL 526078, at \*14 (N.D. Ga. Feb. 16, 2012) ("Entry of an order of nolle prosequi, however, does not mean that the prosecution terminated in favor of the plaintiff."); *Gray v. Dental One Assocs., Inc.*, 605 S.E.2d 366, 367 (Ga. Ct. App. 2004) ("[W]here the defendant in a criminal prosecution settles with the prosecutor the claim which is the subject-matter in issue, the prosecution, although thereby terminated, is not terminated favorably to the defendant."); *Wright v. Walmart Inc.*, No. 2020 WL 4938367, 2020 WL 4938367, at \*4 (N.D. Ga. Apr. 1, 2020) (finding prosecution which ended by way of nolle prosequi plea made "[p]ursuant to plea negotiations" did not terminate in the plaintiff's favor).

Defendants say Plaintiff's prosecution ended because of her agreement to provide certain testimony and as a compromise with the prosecutor, thus precluding Plaintiff from arguing it was a favorable termination. The Court disagrees. The allegations and evidence properly before the Court show that, regardless of the written document, there was no compromise between Plaintiff and the State to obtain the dismissal. Plaintiff simply agreed to tell the truth, something the

District Attorney could compel through a valid subpoena. And, while the written Request for Nolle Prosequi states that the district attorney was seeking nolle prosequi dismissal because Plaintiff would provide truthful testimony, no such representation was made at the dismissal hearing. Indeed, any such agreement was specifically disavowed. The assistant district attorney represented to the court that he was dismissing the charges "outright" after speaking with Plaintiff's attorney. (Dkt. 20-2 at 3.) And, in questioning Plaintiff, the assistant district attorney clarified that he "did [] not promise [Plaintiff] anything at all, or promise [her] attorney anything at all for [her] testimony." (*Id.* at 5.) At the close of his examination, he then thanked Plaintiff for "being honest with the court" and said he had nothing further. (*Id.* at 21.) He never said that she agreed to testify or otherwise indicated her cooperation was in some way a *quid pro quo* for the nolle prosequi. When defense counsel said that he would prefer a dismissal rather than a nolle prosequi (because the latter would take six months to become effective and he was closing his law practice) the assistant district attorney merely responded that he had already completed the paperwork for the nolle prosequi. (*Id.* at 21-22.) He did not object because there was some type of agreement in place.

And, in response to Plaintiff's request for some assurance that new charges would not be filed, the assistant district attorney said that, based on "every bit of information" he knew he was not bringing back the charges. (*Id.*)[20] This is not a case in which charges were dropped because evidence was lost, *see Harris*, 2013 WL 6795973 *7; after a defendant competed a pretrial diversion program, *see McDaniel*, 2012 WL 526078 *14; or pursuant to active plea negotiations, *see Wright,* 2020 WL 4938367, at *4. Accepting Plaintiff's allegations as true and considering the factual materials properly before the Court at this stage of the litigation, the Court cannot conclude as a matter of law that the nolle prosequi was not a favorable resolution.

Defendants also contend Plaintiff's claim fails because there was probable cause for at least one of the arrest warrants. (Dkt. 21-1 at 24.) The Court disagrees. Under Georgia law, "a finding of probable cause as to one related offense arising from the same transaction is a binding determination that there was probable cause for all related charges

---

[20] He later clarified that he would reconsider charges if something drastic happened like a gun or gun casing showed up in Plaintiff's car. (*Id.* at 22.) But he never suggested her failure to cooperate or testify would cause him to refile charges—suggesting testimony was not a *quid pro quo* for the nolle prosequi dismissal.

arising from the same transaction or occurrence." *Remeneski v. Klinakis*, 473 S.E.2d 223, 227 (Ga. Ct. App. 1996). "For application of this rule . . . the charges must be based on the same course of conduct with a reasonable relationship between them." *Id.* (finding that this means more than the charges just arising at the same place and general time or there being merely a sequential relationship between the charges).

Even if the court were to conclude there was probable cause for hindering and tampering, those are not "related offenses" to the murder and assault. And they do not arise out of the same transaction or occurrence. The murder and assault involve the commission of a crime against a victim which occurred at the time of the killing for which Plaintiff was not present. The hindering and tampering, which occurred well after the killing, are not related to the killing but rather to Mr. Walker's attempt to evade capture. The assault, murder, and felony murder are related charges that arise from the same transaction. But the hindering and tampering are not related and do not arise from the same transaction. Under *Holmes v. Achor Center, Inc.*,[21] "for application of [the rule clarified in *Remeneski*], there must be more than just a

---

[21] *Holmes v. Achor Center, Inc.*, 581 S.E.2d 390 (Ga. Ct. App. 2003).

sequential relationship between the charges. Instead, the charges must be based on the same court of conduct with a reasonable relationship between them." *Id.* at 393.   The *Holmes* Court affirmed a grant of summary judgment because the charges against the plaintiff were based on the same course of conduct—violation of a restraining order—and were reasonably related.   Here, the charges arose from two separate events, sequentially related but otherwise very different—one an attack on a victim and the other an attempt to help the assaulter avoid detection. *See Dixon v. Krause*, 773 S.E.2d 40, 43 n.2 (Ga. Ct. App. 2015) (there was no dispute there was probable cause to arrest the plaintiff for DUI, driving without a license, and improper display of license plates, but because those offenses arose from a separate transaction—the stop of the plaintiff—the probable cause would not preclude a malicious prosecution claim as to fleeing or attempting to elude a police officer, reckless driving, improper passing, and failure to maintain lane).   The Court thus denies Defendants' motion to dismiss Plaintiff's state law malicious prosecution claim.

## F.    Punitive Damages

Plaintiff brings a claim for punitive damages under O.C.G.A. § 51-12-5.1.  (Dkt. 20 ¶¶ 64–67.)  Defendants contend this claim fails because it "is dependent on the other state-law claims—which also fail." (Dkt. 21-1 at 25.)  The Court disagrees.  As the Court has not dismissed Plaintiff's claim for malicious prosecution, the Court denies Defendants' motion to dismiss Plaintiff's claim for punitive damages.  *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) ("A punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required.").

## G.    Amend Complaint

In her response to Defendants' motion to dismiss, Plaintiff asks the Court not to dismiss her complaint without providing her an opportunity to amend, supplement, or correct the errors as noted by the Court.  (Dkt. 23 at 24.)  Although courts should "freely give" leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiff did not file a motion for leave to amend setting forth the substance of the proposed amendment or attach a copy of a proposed amended complaint.  In other

words, although Plaintiff requests leave to amend, she has not indicated to this Court what additional facts she can honestly plead that could cure the deficiencies of her complaint.  Plaintiff's request for leave to amend is therefore legally insufficient and is denied.  *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (concluding that the district court did not abuse its discretion in denying request for leave to amend where the request was merely included in a footnote in the plaintiffs' brief in opposition to the defendants' motion to dismiss and did not "describe the substance of [the] proposed amendment"); *United States ex rel. Atkins v. McIntee*r, 470 F.3d 1350, 1361–62 (11th Cir. 2006) (affirming denial of leave to amend when the plaintiff did not file a motion for leave to amend, the request for leave to amend was in the memorandum she filed in opposition to the motion to dismiss, and she failed to attach the amendment or set forth the substance of the proposed amendment); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (holding that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly").  Should Plaintiff wish to file an amended complaint,

she may do so with Defendants' consent or the Court's leave, pursuant to Rule 15(a)(2).

## IV.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. 21).  The Court dismisses Counts I and III.

The Court **DENIES** Plaintiff's Motion to File Excess Pages (Dkt. 23 at 43).  The parties are **ADMONISHED** to comply with the requirements of the Court's Standing Order Regarding Civil Litigation (Dkt. 4) and the Local Rules regarding page limits and extension requests.  The Court **WARNS** Plaintiff that it will strike her next filing that fails to comply in any way with the Court's Standing Order or the Local Rules.

**SO ORDERED** this 12th day of August, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE