FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Oct 04 2022

KEVIN P. WEIMER , Clerk

By: s/Kari Butler

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TASHON BROWN,

     Plaintiff,

  v.

Detective CHRIS REED, *in his individual capacity as a police officer for Cedartown Police Department*, Captain CRAIG PEYTON, *in his individual capacity as a police officer for Cedartown Police Department*, and JOHN DOE 1-5, *Officers Unknown to the Plaintiff at this time, in their individual capacities as police officers for the City of Cedartown and Polk County*,

     Defendants.

CIVIL ACTION FILE

NO. 4:20-CV-00179-WEJ

## **ORDER**

Members of the Cedartown Police Department investigating the murder of Ronald Morris Bentley suspected that Tashon Brown was driving the vehicle from which LaRyan Walker fired the fatal shot. Acting on that suspicion, Detective Chris Reed submitted Affidavits for Arrest on various charges to a magistrate, who

issued arrest warrants for Ms. Brown, and a grand jury later indicted her on those charges.  The District Attorney eventually dropped the charges, but not before Ms. Brown had spent over two months in jail.  Understandably aggrieved by this situation, Ms. Brown filed this suit.

This case raises the question whether an officer whose investigation leads to the arrest via a warrant of the wrong person can be held liable for malicious prosecution.  Given the undisputed material facts of this case, the answer to that question is no.  Therefore, Defendants' Motion for Summary Judgment [58] is **GRANTED**.

## I.    <u>PROCEDURAL BACKGROUND</u>

On June 27, 2020, Plaintiff filed her Complaint [1-2] in the Superior Court of Polk County, Georgia.  On July 29, 2020, Defendants removed [1] the case to this Court.  After Defendants filed a Motion to Dismiss [7], the Honorable Michael L. Brown, United States District Judge, allowed Plaintiff an opportunity to amend her Complaint.  (<u>See</u> Order [18] of Sept. 29, 2020.)  On October 2, 2020, Plaintiff filed her First Amended Complaint ("FAC") [20], which asserted five counts against Defendants in their individual capacities:  (1) false imprisonment; (2) Fourth Amendment malicious prosecution asserted via 42 U.S.C. § 1983 ("Section

2

1983"); (3) intentional infliction of emotional distress; (4) state law malicious prosecution; and (5) punitive damages.

Defendants filed a Motion to Dismiss [21] the FAC.  In an Order [31] dated August 12, 2021, Judge Brown granted in part and denied in part Defendants' Motion.  He dismissed the claims for false imprisonment (Count I) and intentional infliction of emotional distress (Count III), but allowed claims alleging Fourth Amendment malicious prosecution (Count II) and state law malicious prosecution (Count IV) and seeking punitive damages (Count V), to proceed to discovery.

Judge Brown applied a standard to that Motion to Dismiss which differs from the one applicable to the instant Motion for Summary Judgment.  Specifically, he noted that, "[a]t the motion to dismiss stage, 'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'"  (Order of Aug. 12, 2021 [31], at 8-9) (quoting Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).)  Thus, with regard to the malicious prosecution claims that survived the Motion to Dismiss, Judge Brown assumed (as he was required to do) the truth of a significant allegation made in the FAC—that Detective Reed obtained warrants by falsely alleging in his Affidavits for Arrest that Ms. Brown aided Mr. Walker in the murder by driving

3

his car at the time of the shooting.  (Id. at 18; see also FAC ¶ 28.)  Although Judge

Brown made that assumption, he added the following observation:

> Perhaps that is an issue that will be in dispute at summary judgment.
> But, at this point, the Court accepts Plaintiff's contention that
> Defendant Reed knew Plaintiff was not driving the car at the time of
> the shooting but falsely averred that she was.

(Order of Aug. 12, 2021 [31], at 18 n.14.)[1]

The parties consented to the undersigned's authority on September 27, 2021

[36], and Judge Brown referred the case the next day [37].  Following a period of

discovery, on May 31, 2022, Defendants filed the instant Motion for Summary

Judgment [58], which has been fully briefed.  (See Defs.' Br. in Supp. of Mot. for

Summ. J. [58-1]; Pl.'s Resp. to Defs.' Mot. for Summ. J. [62]; Defs.' Reply Br. in

Supp. of Mot. for Summ. J. [66].)  This case is now ripe for decision.

## II.   STATEMENT OF FACTS

To assist with framing the undisputed material facts, Local Civil Rule 56.1

requires certain filings by the parties in conjunction with a summary judgment

motion.  See N.D. Ga. Civ. R. 56.1(B)(1)-(2)(a).  Defendants as movants filed a

---

[1] As discussed infra, Defendant Reed denies this allegation that Judge Brown properly assumed was true, and Plaintiff submits no probative evidence to challenge that denial.

Statement of Undisputed Material Facts [58-2] ("DSUMF"), to which Plaintiff responded.  (See Pl.'s Resp. to DSUMF [62-1] ("PR-DSUMF").)  As allowed by Local Civil Rule 56.1(B)(2)(b), Plaintiff as respondent filed a statement of additional facts which she contends are material and present a genuine issue for trial.  (See Pl.'s Stat. of Mat. Facts [62-2] ("PSMF").)  As required by Local Civil Rule 56.1(B)(3), Defendants filed a response.  (See Defs.' Resp. to PSMF [65] ("DR-PSMF").)

Through this exchange of required filings, Plaintiff admits many of the facts proposed by Defendants.  (See PR-DSUMF ¶¶ 1-16, 18, 21-24, 40, 53, 66, 74-82, and 89.)  Defendants admit one fact proposed by Plaintiff (see DR-PSMF ¶ 12) and object to the remainder.  (Id. ¶¶ 1-11, 13-15.)[2]  The Court accepts as undisputed for purposes of this Motion any fact that one side proposes that the other side admits.

The manner in which Plaintiff responded to many of the proposed facts she did not admit runs afoul of Local Civil Rule 56.1(B)(2)(a).  This Rule, which governs how Plaintiff was required to respond to Defendants' proposed facts and how this Court must treat deficient responses, provides in relevant part as follows:

---

[2] PSMF contains two paragraphs numbered 10.  The Court addresses Defendants' objections to PSMF, infra.

5

(2)     This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

. . . .

(4)     The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Fed. R. Civ. P. 56(d).

N.D. Ga. Civ. R. 56.1(B)(2)(a)(2), (4).

For example, PR-DSUMF frequently asserts that "Plaintiff can neither admit nor deny" some facts proposed by Defendants. (See PR-DSUMF ¶¶ 26-39, 41-44, 47-52, 54, 58-65, 68-69, and 83-88.) However, the above-quoted provision of the Local Civil Rule provides that such a response is not acceptable unless Plaintiff has complied with the provisions of Federal Rule of Civil Procedure 56(d). Ms. Brown has not shown by "affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition." Fed. R. Civ. P. 56(d). Therefore, her assertion that "Plaintiff can neither admit nor deny" is unacceptable. Accordingly, the Court deems admitted each proposed fact to which Plaintiff responds in that manner.

6

Additionally, Ms. Brown sometimes employs the response, "denies as written" (see PR-DSUMF ¶¶ 20, 25, 55, 67, 72-73), or asserts that she "can neither admit nor deny as written" (id. ¶¶ 45, 56-57). Responses such as those fail to "directly refute" Defendants' proposed facts with the requisite specificity and "citation[] to evidence," and therefore fail to satisfy the requirements of the Local Civil Rules. Thus, each proposed fact to which Plaintiff responded in that manner is also deemed admitted.

In sum, for the purpose of framing this Statement of Facts, the Court deems admitted DSUMF ¶¶ 20, 25-39, 41-45, 47-52, 54-65, 67-69, 72-73, and 83-88.[3] This means that Plaintiff only properly disputed or asserted objections to DSUMF

---

[3] Failure to comply with Local Civil Rule 56.1(B)(2) is "the functional analog of an unopposed motion for summary judgment." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008). Local Civil Rule 56.1, however, "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting Reese, 527 F.3d at 1268). "Even in an unopposed motion, the moving party still bears the burden of identifying 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrates the absence of a genuine issue of material fact." Id. at 1303 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). After the moving party's stated material facts are deemed admitted, the Court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Id. (citing Reese, 537 F.3d at 1269). The Court has done so here and is satisfied that there is no genuine issue of material fact left for a trial.

¶¶ 17, 19, 46, and 70-71.  (<u>See</u> PR-DSUMF ¶¶ 17, 19, 46, and 70-71.)  The Court addresses those five responses, <u>infra</u>.

Finally, as noted above, Defendants object to all but one of the facts proposed by Ms. Brown in PSMF.  Their objections have merit.  This is because Ms. Brown's proposed statement of additional material facts "must meet the requirements set out in LR 56.1(B)(1)."  N.D. Ga. Civ. R. 56.1(B)(2)(b).  Local Civil Rule 56.1(B)(1) requires that

> [e]ach material fact must be numbered separately and supported by a citation to evidence proving such fact.  The Court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

<u>Id.</u> 56.1(B)(1).  PSMF repeatedly proposes facts that lack citation entirely, cite to inappropriate sources such as DSUMF, or are clearly impermissible legal conclusions.  Given the explicit prohibition in the Local Civil Rules on considering such deficient proposed facts, the Court sustains Defendants' objections to PSMF

¶¶ 1-11, and 14-15 and excludes them.[4]  With these preliminaries out of the way, the Court sets out the undisputed material facts as follows.

### A.    The Crime and Investigation

During the early-morning hours of June 24, 2018, Ronald Morris Bentley was shot and killed near the intersection of Gibson Street and Ronald L. Parks Boulevard in Cedartown, Georgia.  (DSUMF ¶ 1.)  Detective Chris Reed and Captain Craig Peyton,[5] along with Detective Jimmy Ray and Georgia Bureau of Investigation Agent Mandy Rowlen, began investigating Mr. Bentley's murder.  (Id. ¶ 85.)  The investigation included the following interviews:  Ms. Brown (twice); LaRyan Walker; Felicia Martin; Kia Hames;[6] Jamika Anderson; Andrea Young; Demetrius Brown; Brandon Jackson; Nicholas Ross Matthews; and Charlene Mitchell.  (Id. ¶¶ 53, 86.)

_____

[4] As discussed infra, the Court includes PSMF ¶¶ 12-13 herein but modifies them per the record cited.  The Court excludes DSUMF ¶¶ 73-75 as immaterial.

[5] The FAC refers to the Captain's surname as both "Payton" and "Peyton." As did Judge Brown, the undersigned refers to him as Captain Peyton, because that is how his name is reflected in the docket.  That being said, the Captain's Affidavit [58-4] spells his surname "Payton."

[6] Kia Hames is Ms. Brown's sister.  (DSUMF ¶ 89.)  In June 2018, Ms. Hames lived at 501 Line Street and was dating LaRyan Walker.  (Id. ¶ 88.)

### 1.    Ms. Brown's First Interview

Captain Peyton and Agent Rowlen first interviewed Ms. Brown on June 25, 2018 ("First Interview"). (DSUMF ¶ 10.)  During this First Interview, Ms. Brown admitted to being in the vicinity of Gibson Street and Robert L. Parks Boulevard around the time of the shooting and hearing gunshots.  (Id. ¶ 11.)  She stated that she traveled east on Gibson Street and crossed Robert L. Parks Boulevard around the time of the shooting.  (Id. ¶ 14.)  Ms. Brown also admitted knowing what the shooting victim (Mr. Bentley) looked like and that he was carrying a gas can.  (Id. ¶ 15.)  Ms. Brown stated that she was in a car with LaRyan Walker parked near Turner Park at the time of the gunshots.  (Id. ¶¶ 12-13.)

### 2.    Ms. Brown's Second Interview

Captain Peyton and Agent Rowlen interviewed Ms. Brown a second time on June 28, 2018 ("Second Interview").  (DSUMF ¶ 16.)   During this Second Interview, Ms. Brown admitted to possessing the gun she believed was used to shoot Mr. Bentley.  (Id. ¶ 17.)[7]  Ms. Brown stated that she was outside her sister's house on Line Street when she heard the gunshots.  (Id. ¶ 18.)  Ms. Brown admitted

---

[7] Plaintiff denies that she knowingly possessed Mr. Walker's gun.  (See PR-DSUMF ¶ 17.)  However, the record Defendants cite supports the proposed fact. Therefore, the Court deems DSUMF ¶ 17 admitted.

knowing that there was a gun in the backpack that she took from LaRyan Walker after the shooting.  (Id. ¶ 19.)[8]  Mr. Brown first denied knowledge of whether Mr. Walker had shot Mr. Bentley.  (Id. ¶ 20.)  Ms. Brown later stated that "he shot him"—referring to Mr. Walker shooting Mr. Bentley.  (Id. ¶ 21.)  Ms. Brown stated that she sat in the passenger seat of the SUV with Mr. Walker, which contradicted her previous statement to law enforcement that she was driving the SUV.  (Id. ¶ 22.)  Ms. Brown stated that when they left Mr. Walker's grandmother's house, she was driving in front of the SUV being driven by Mr. Walker, which contradicted her statement in her First Interview that she was behind Mr. Walker.  (Id. ¶ 23.)  Ms. Brown stated that Mr. Walker was driving the SUV "right behind [her]" when they traveled from Mr. Walker's grandmother's house to Kia Hames's house.  (Id. ¶ 24.)  Ms. Brown stated that she saw a gun when she got into the SUV with Mr. Walker.  (Id. ¶ 25.)

### 3. LaRyan Walker Interview

Detective Reed and Agent Rowlen interviewed LaRyan Walker on June 25, 2018.  (DSUMF ¶ 26.)  Mr. Walker stated that he and a female were inside the

---

[8] Plaintiff again denies knowingly possessing Mr. Walker's gun.  (See PR-DSUMF ¶ 19.)  However, the record Defendants cite supports the proposed fact.  Therefore, the Court deems DSUMF ¶ 19 admitted.

11

same car at the time of the gunshots.  (Id. ¶ 27.)  Mr. Walker refused to provide law enforcement with the female's identity.  (Id. ¶ 28.)  Mr. Walker stated that the female he was with at the time was driving the car that they were inside.  (Id. ¶ 29.)  Mr. Walker first told law enforcement that "Betty's"[9] car was at Kia Hames's house and that they left the "truck" at the park, but then later told law enforcement that "her" truck was at the park and his "truck" was at Kia Hames's house.  (Id. ¶ 30.)

### 4.    Charlene Mitchell Interview

Law enforcement also interviewed Charlene Mitchell.  (DSUMF ¶ 31.)  Ms. Mitchell stated that she was walking near the intersection of Gibson Street and Ronald L. Parks Boulevard at the time of Mr. Bentley's shooting on June 24, 2018.  (Id. ¶¶ 32, 41.)  Ms. Mitchell reported seeing a grey SUV in the area at the time of the shooting.  (Id. ¶ 33.)  Ms. Mitchell told law enforcement that Mr. Bentley was on the passenger side of a grey SUV at the time he was shot.  (Id. ¶¶ 34, 42.)  Ms. Mitchell told law enforcement that based on her observations, she believed that

---

[9] Captain Peyton discovered that Ms. Brown was "Betty" from Mr. Walker's interview while serving a search warrant at 501 Line Street.  (DSUMF ¶ 87.)

there were two people in the SUV at the time of the shooting—a driver and a shooter.  (Id. ¶¶ 35, 43.)

### 5.     Felicia Martin Interview

Captain Peyton and Detective Reed interviewed Felicia Martin on June 25, 2018.  (DSUMF ¶ 36.)  Ms. Martin stated that she was outside during the early morning hours of June 24, 2018 and heard gunshots.  (Id. ¶ 37.)  Ms. Martin stated that soon thereafter, she saw a gold Pathfinder driving north on Line Street without its headlights on which parked near Turner Park.  (Id.)  Ms. Martin stated that she saw LaRyan Walker and a black female exit the car.  (Id.)  Ms. Martin stated that she saw Mr. Walker walk toward Line Street, and the female walk west on Jefferson Street near the Big H toward Park Street.  (Id. ¶¶ 38-39.)

### B.     Detective Reed and Captain Peyton's Theory

Both Detective Reed and Captain Peyton are experienced investigative officers who have each conducted many interviews throughout their careers.  (DSUMF ¶¶ 56-57.)   During this investigation, (1) Mr. Walker attempted to withhold Ms. Brown's identity from law enforcement (id. ¶ 65), (2) it was discovered that Ms. Brown and Mr. Walker were attempting to hide their affair from Ms. Hames, whom Mr. Walker was dating at the time (id. ¶ 66), and (3) both Ms. Brown and Mr. Walker told law enforcement that they were together at the

time of the gunshots.  (Id. ¶ 72; see also id. ¶ 67.)  Additionally, dash cam video taken after the murder showed a female, believed to be Ms. Brown, walking toward Mr. Walker's grandmother's house.  (Id. ¶ 70, modified for accuracy per the record cited.)

Captain Peyton did not think it was reasonable that Ms. Brown would have left her car at her sister's house.  (DSUMF ¶ 62.)  Because Ms. Brown had given conflicting statements, Captain Peyton took what matched between Ms. Brown's statements and Mr. Walker's statement and used reasonableness to form the following theory:  Mr. Walker murdered Mr. Bentley and that Ms. Brown was a party to that crime.  (Id. ¶¶ 63-64.)

Likewise, Detective Reed did not believe it was reasonable that Ms. Brown would leave her car at her sister's house when she was trying to hide her affair with Mr. Walker.  (DSUMF ¶ 68.)  Nor did Detective Reed think it was reasonable that Mr. Walker, after shooting Mr. Bentley, would stop and pick up Ms. Brown and drive to the park.  (Id. ¶ 69.)  These beliefs, combined with Ms. Brown's original statement that she was with Mr. Walker at the time of the gunshots (id. ¶ 67) and the dash cam video believed to show her walking in the direction of Mr. Walker's

14

grandmother's house (id. ¶ 70), led Detective Reed to believe that Ms. Brown was in the vehicle when Mr. Walker shot Mr. Bentley (id. ¶ 71).[10]

Ultimately, from the investigation detailed above, Detective Reed and Captain Peyton developed the theory that (1) Ms. Brown and Mr. Walker were together before, after, and at the time that Mr. Walker shot Mr. Bentley; (2) Ms. Brown was driving the vehicle from which Mr. Walker shot Mr. Bentley; and (3) Ms. Brown took the murder weapon after the shooting in order to conceal their involvement. (DSUMF ¶¶ 83-84.)

### C.    Detective Reed and Captain Peyton Meet with Polk County DA

Detective Reed and Captain Peyton met with Polk County District Attorney ("DA") Jack Browning to discuss what, if any, charges to seek against Ms. Brown. (DSUMF ¶ 58.) During this meeting, Captain Peyton and Detective Reed revealed everything they knew about the case to DA Browning. (Id. ¶ 59.) Ultimately, DA Browning agreed with Detective Reed and Captain Peyton that there was probable cause and advised them to seek arrest warrants for Ms. Brown for her involvement in Mr. Bentley's murder as a party to the crime. (Id. ¶¶ 60-61.) Both Detective

---

[10] Although Plaintiff denies both DSUMF ¶¶ 70-71, nothing she writes in PR-DSUMF ¶¶ 70-71 contravenes them. Thus, the Court deems them admitted.

Reed and Captain Peyton concede that, had DA Browning advised against charging Ms. Brown with felony murder, they would not have sought a warrant for that charge at that time.  (PSMF ¶¶ 12-13, modified per DR-PSMF ¶¶ 12-13 and record cited.)

### D. <u>Detective Reed Obtains Arrest Warrants for Ms. Brown</u>

On June 29, 2018, Polk County Magistrate Judge Jean Crane signed arrest warrants for Ms. Brown for the following charges:  (1) Hindering Apprehension of a Felon (O.C.G.A. § 16-10-50); (2) Tampering with Evidence (<u>id.</u> § 16-10-94); (3) Party to the Crime of Malice Murder (<u>id.</u> §§ 16-2-20, 16-5-1(a)); (4) Party to the Crime of Felony Murder (<u>id.</u> §§ 16-2-20, 16-5-1(c)); (5) Party to the Crime of Aggravated Assault (<u>id.</u> §§ 16-2-20, 16-5-21); and (6) Possession of Firearm During Commission of a Crime (<u>id.</u> § 16-11-106).  (DSUMF ¶ 82.)

Detective Reed signed the "Affidavits for Arrest" supporting his request for the warrants.  The Affidavits for Arrest he submitted to the magistrate on the charges numbered (3), (4), (5), and (6) above are largely identical with the exception of the crime described.  The Affidavit for Arrest for the malice murder charge, for example, reads in relevant part as follows:

> Personally came Chris Reed, who on oath says that, to the best of his knowledge and belief, Tashon Brown did, in Polk County, commit the offense of Felony, Murder.  Between on June 24, 2018 at 05:00 AM

16

to June 24, at 05:30 AM.   The place of occurrence of said offense being Robert L Parks BLVD at Gibson St.

Said offense being described as 16-5-1(a) Felony, Murder.

On 06/24/2018 between 0500hrs and 0530hrs Accused did commit the offense of Party to the Crime 16-2-20, thus did the commit the offense of Murder, 16-5-1, when Accused did, unlawfully and with malice, cause of the death of victim Ronald Bentley.  While at Robert L Parks BLVD and Gibson St the **Accused was driving the suspect vehicle when co-defendant Laryan Walker did shoot victim with a firearm placing a round in the chest of unarmed victim Ronald Bentley**.   By driving the vehicle, Accused intentionally aided co-defendant Laryan Walker when Walker did use a deadly weapon offensively against said victim thus committing Party to the Crime of Aggravated Assault 16-5-21.   Accused did commit the offense of Party to the Crime of Felony Murder 16-5-1(c) when Accused intentionally aided co-defendant Laryan Walker while Walker committed the act of Aggravated Assault resulting in the death of said victim.   Based on above, Accused did commit the offense of Party to a Crime of Possession of Firearm during the Commission of a Crime, 16-11-106, when accused did intentionally aid co-defendant Laryan Walker while Walker possessed a firearm during an Aggravated Assault.

(Pl.'s Ex. A [23-3], at 4 (emphasis added).)

Detective Reed avers that he did not lie in the Affidavits for Arrest that he submitted to the magistrate to obtain the warrants.  (DSUMF ¶ 46.)[11]  Plaintiff

---

[11] In other words, Detective Reed did not write in his Affidavits that Ms. Brown was driving the suspect vehicle when he knew that she was not.   As discussed above, he wrote that she was driving the suspect vehicle because that was what he believed at the time, based on his investigation and experience.

denies this proposed fact, citing Detective Reed's Affidavits, the Complaint, and Judge Brown's Order of August 12, 2021.  (See PR-DSUMF ¶ 46.)  However, none of those citations support her denial.  For example, nothing in Detective Reed's Affidavits for Arrest shows that he lied.  Moreover, the FAC contains allegations, not evidence.[12]  Finally, Judge Brown's Order is not evidence that can be used to oppose summary judgment.  Because that Order decided a Motion to Dismiss, Judge Brown was required to accept the truth of Plaintiff's allegation that Detective Reed lied in the Affidavits for Arrest when he averred that she was driving Mr. Walker's car when he shot Mr. Bentley.  Indeed, as discussed in the text preceding note 1, supra, Judge Brown recognized that this fact may be disputed at the summary judgment stage (and it is).  If Plaintiff obtained evidence in discovery suggesting that Detective Reed lied in those Affidavits for Arrest, then she is obliged to produce it now.  She has not done so.  Therefore, the undisputed material fact is that Detective Reed did not lie in the Affidavits that he submitted to the magistrate to obtain the arrest warrants.

---

[12] The Local Civil Rules provide that the Court will "not consider any fact . . . supported by a citation to a pleading rather than to evidence[.]"  N.D. Ga. Civ. R. 56.1(B)(1).

At the time of Ms. Brown's arrest, based on their investigation, both Detective Reed and Captain Peyton believed that Ms. Brown and Mr. Walker were together before, after, and at the time Mr. Walker shot Mr. Bentley. (DSUMF ¶¶ 47, 50.) More specifically, at the time of Ms. Brown's arrest, both Detective Reed and Captain Peyton believed that Ms. Brown (1) was in the vehicle with Mr. Walker at the time of the shooting (id. ¶¶ 45, 55), (2) was driving the vehicle from which Mr. Walker shot Mr. Bentley (id. ¶¶ 48, 51), and (3) took the murder weapon after the shooting in order to conceal her and Mr. Walker's involvement in Mr. Bentley's murder (id ¶¶ 49, 52).

### E.    Ms. Brown's Arrest and Subsequent Proceedings

Captain Peyton arrested Ms. Brown on June 28, 2018, pursuant to a Floyd County arrest warrant and transferred her to the Floyd County Jail shortly thereafter. (DSUMF ¶¶ 2-3.) Ms. Brown received an own-recognizance bond in Floyd County Jail, but a hold from Polk County (caused by the aforementioned arrest warrants) prevented her release. (Id. ¶ 4.) Ms. Brown was subsequently transferred from the Floyd County Jail to the Polk County Jail. (Id. ¶ 5.)

On July 17, 2018, a Polk County Grand Jury issued a True Bill (i.e., an Indictment) on a Special Presentment in Case No. 2018CR-853M. (DSUMF ¶ 80.) The Indictment charged Ms. Brown with: (1) Party to the Crime of Malice Murder;

19

(2) Party to the Crime of Felony Murder; (3) Party to the Crime of Felony Murder; (4) Party to the Crime of Aggravated Assault; (5) Party to the Crime of Aggravated Assault; and (6) Possession of a Firearm During the Commission of a Felony.  (Id. ¶¶ 6, 81.)

Ms. Brown was granted a bond and released from the Polk County Jail on September 11, 2018.  (DSUMF ¶ 7.)  More than a year and a half later, on May 20, 2020, after she agreed to provide testimony at trial, Judge Mark H. Murphy of the Superior Court of Polk County entered a *nolle prosequi* of the criminal charges against Ms. Brown.  (Id. ¶¶ 8-9, 40.)

Before June 2018, Ms. Brown had never seen or met Captain Peyton. (DSUMF ¶ 76.)  Similarly, Ms. Brown's only interaction with Detective Reed during this time period came in September 2018, when he witnessed a handwritten statement she provided to law enforcement.  (Id. ¶ 78.)  Neither Detective Reed nor Captain Peyton harbored any ill will towards Ms. Brown (id. ¶¶ 44, 54), and she knows of no reason either of them would have to harm her (id. ¶¶ 77, 79).

## III.   SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp., 477 U.S. at 323). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all

21

justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 251. The applicable substantive law will identify those facts that are material. Id. at 248. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. Id. Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. For factual issues to be "genuine," they must have a real basis in the record. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." Id. at 587.

## IV.   ANALYSIS

As a result of Judge Brown's Order of August 12, 2021, Plaintiff has two remaining substantive claims:  Fourth Amendment malicious prosecution (FAC, Count II) and state law malicious prosecution (id. Count IV).  Based on the allegations of Count IV, she also asserts a state law punitive damages claim.  (Id. Count V.)  Because the Fourth Amendment malicious prosecution claim and the

state law malicious prosecution claim share common elements, the Court considers them together below in Part IV.A.  Thereafter, the Court addresses Defendants' arguments seeking qualified immunity (Part IV.B.1.)[13] and official immunity (Part IV.B.2.), Ms. Brown's claim for punitive damages (Part IV.C.), and finally the fate of the "John Doe" defendants (Part IV.D.).

## A.   <u>Malicious Prosecution</u>

Ms. Brown contends that Defendants violated her right under the Fourth Amendment to be free from unreasonable seizure as a result of a malicious prosecution.  (FAC Count II.)  Plaintiff brings this claim under Section 1983, which "is not itself a source of substantive rights," but rather "a method for vindicating federal rights elsewhere conferred."  <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979).   That federal right she seeks to vindicate is the found in the Fourth

---

[13] <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), mandated a two-step sequence for resolving government officials' qualified immunity claims.  First, a court must decide whether the facts that a plaintiff has alleged (<u>see</u> Fed. R. Civ. Pro. 12(b)(6), (c)) or shown (<u>id.</u> Rules 50, 56) make out a violation of a constitutional right.  <u>Id.</u> at 201.  Second, if the plaintiff satisfies this first step, then the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.  <u>Id.</u>  Although <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009) made the two-step procedure non-mandatory, the undersigned follows the traditional sequence because "the relevant facts do not make out a constitutional violation at all."  <u>Id.</u>

Amendment, applied to the States through the Fourteenth Amendment.  <u>See</u> <u>Whiting v. Taylor</u>, 85 F.3d 581, 583-84 (11th Cir. 1996).  The Fourth Amendment prohibits "unreasonable . . . seizures," and also provides that "no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.

Plaintiff also asserts a state law malicious prosecution claim under O.C.G.A. § 51-7-40.  (FAC Count IV).  O.C.G.A. § 51-7-40 provides as follows:  "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damages to the person prosecuted shall give him a cause of action."

To maintain a Fourth Amendment malicious prosecution claim via Section 1983, Ms. Brown must prove (1) that she suffered a seizure pursuant to a legal process that violated the Fourth Amendment, and (2) the elements of the common law tort of malicious prosecution.  <u>Williams v. Aguirre</u>, 965 F.3d 1147, 1157 (11th Cir. 2020).[14]  The Court analyzes these two elements of proof separately below.

_____

[14] The second element of Section 1983/Fourth Amendment malicious prosecution claim and the elements of malicious prosecution claim under Georgia law are co-extensive.  <u>See</u> <u>Clifton v. Jeff Davis Cnty., Ga.</u>, No. 2:16-CV-108, 2019 WL 2385191, at *6 (S.D. Ga. June 5, 2019).  Thus, the Court examines them together in Part IV.A.2.

1.       **Constitutionality of Seizure Pursuant to Legal Process**

Claims of "[m]alicious prosecution . . . require[] a seizure 'pursuant to legal process.'" Aguirre, 965 F.3d at 1158 (quoting Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016)).   "Warrant-based seizures fall within this category." Sorrells v. Dodd, No. 4:20-CV-188-AT, 2021 WL 4928416, at *7 (N.D. Ga. Sept. 29, 2021).   "A 'seizure' occurs when a person is subjected to a significant deprivation of liberty.  Being arrested and put in jail is the quintessential seizure." May v. Morgan Cnty., No. 3:19-CV-82 (CDL), 2021 WL 5985000, at *5 (M.D. Ga. Dec. 16, 2021).

"[S]eizures pursuant to legal process concern whether the judicial officer who approved the seizure had sufficient information to find probable cause." Aguirre, 965 F.3d at 1162-63.  A Fourth Amendment violation involving a warrant-based seizure occurs "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.'" Manuel v. City of Joliet, Ill., 17 S. Ct. 911, 918 (2017).  When this occurs, "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." Id. at 918-19.

Thus, "the lawfulness of seizures pursuant to legal process turns on the validity of the legal process itself." Aguirre, 965 F.3d at 1162.  To prevail on the

first element of her claim, Ms. Brown "must establish (1) that the legal process authorizing [her] seizure was constitutionally infirm and (2) that [her] seizure would not otherwise be justified without legal process." Id. at 1165.[15]

Ms. Brown can prove that the arrest warrants were constitutionally infirm if she establishes either (1) that "the officer who applied for the warrant should have known that his application failed to establish probable cause," or (2) that "an official, even an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." Aguirre, 965 F.3d at 1165.

Ms. Brown does not argue that the Affidavits for Arrest failed to establish probable cause.   Instead, Plaintiff contends that Detective Reed obtained the warrants by falsely averring in the Affidavits for Arrest that she was driving Mr.

_____

[15] "[W]here the officers had probable cause to believe that the person committed a felony, the arrest is valid whether the officers acted pursuant to a defective warrant or no warrant at all." Wilson v. Attaway, 757 F.2d 1227, 1239 (11th Cir. 1985).  In other words, if Plaintiff could establish that the legal process authorizing her seizure was constitutionally infirm, then she would also have to show that officers lacked probable cause to arrest her without a warrant. Because, as discussed infra, Plaintiff cannot establish the first part of her claim, it is unnecessary for the Court to address the second.

Walker's car at the time he shot Mr. Bentley. (FAC ¶ 28.)[16] However, as already discussed at length, this is an allegation, not evidence. Ms. Brown has the burden of creating a genuine material fact dispute about whether Detective Reed's statements in the Affidavits for Arrest were intentionally false and not, for example, "a mistaken belief" on his part following the investigation. Aguirre, 965 F.3d at 1165. "'[G]eneral attacks upon [a] defendant's credibility' are not enough to meet this burden." Id. (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)). "Nor are conclusory allegations and speculation." Id. (citing Valderrama v. Rousseau, 780 F.3d 1108, 1112 (11th Cir. 2015)). "Instead, [Plaintiff] must 'identify affirmative evidence from which a jury could find that' [Detective Reed] lied" when he stated that she was driving the car when Mr. Walker shot and killed Mr. Bentley. Id. (quoting Britton, 523 U.S. at 600).

Detective Reed has averred that he did not lie in the Affidavits for Arrest. Based on his investigation and experience, he believed that Ms. Brown was the

_____

[16] Although both Officers believed, based on their investigation, that Ms. Brown was in the vehicle with Mr. Walker at the time he shot Mr. Bentley (see DSUMF ¶¶ 51, 55), it is undisputed that only Detective Reed signed the Affidavits for Arrest. Thus, Plaintiff's contention that the "Officers" provided false statements in their arrest affidavits (Pl.'s Resp. to Defs.' Mot. Summ. J. 9, 12-13) could only refer to Detective Reed.

27

driver. Plaintiff has not submitted any probative evidence suggesting that a reasonable jury could conclude that Detective Reed's statements in the Affidavits for Arrest that Ms. Brown was the driver were false.  Instead Ms. Brown cites Judge Brown's Order of August 12, 2021 as support for her claim that "the warrants for arrest have been proven to be both infirmed, and false."  (Pl.'s Resp to Defs.' Mot. for Summ. J. 16.)  This assertion suggests a fundamental misunderstanding of the standards applied in reviewing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) versus the standards applied in reviewing motions for summary judgment under Federal Rule of Civil Procedure 56.  Judge Brown's acceptance of Ms. Brown's "contention that Defendant Reed knew Plaintiff was not driving the car at the time of the shooting but falsely averred that she was" in his Order of August 12, 2021 has no impact at this stage of the case and fails to support her claim that the arrest warrants were constitutionally infirm.

As shown below, the Fourth Amendment requires a warrant affiant like Detective Reed to provide information with a reasonable belief in its veracity, but it does not have to be perfect:

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful showing*.  This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct . . .

> [b]ut surely it is to be "truthful" in the sense that the information put
> forth is believed or appropriately accepted by the affiant as true.

<u>Franks v. Delaware</u>, 438 U.S. 154, 164-65 (1978) (citations omitted).[17]   The

undisputed material facts here show that the "information put forth [by Detective

Reed was] believed or appropriately accepted by the affiant as true." <u>Id.</u> at 165.

That is all that is required.   Because this Court has deemed Plaintiff to have

admitted that Detective Reed "believed" she was driving the vehicle from which

Mr. Walker shot Mr. Bentley (DSUMF ¶ 48), she has no factual basis to assert that

he was untruthful in the Affidavits for Arrest.

Because Plaintiff has no proof that Detective Reed (or Captain Peyton, for

that matter) lied to the magistrate in the Affidavits for Arrest, what she really has

is a claim that members of the Cedartown Police Department conducted an

inadequate investigation into the murder and charged her by mistake.   However,

she has alleged no such claim, but even if she had, proving liability is an uphill

battle given the governing standards.   It is clear that "[a]n arresting officer is

required to conduct a reasonable investigation to establish probable cause." <u>Rankin</u>

---

[17] "Although <u>Franks</u> involved a *search* warrant, we have applied its rule in a
case challenging a search made pursuant to an improperly obtained *arrest* warrant."
<u>Kelly v. Curtis</u>, 21 F.3d 1544, 1554 (11th Cir. 1994) (emphasis in original).

29

v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)  But an officer is not required to take "every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person." Id. at 1436 (quoting Tillman v. Coley, 886 F.2d 317, 321 (11th Cir. 1989)); see also Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004) ("[A] police officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir.1997))), abrogated on other grounds by Aguirre, 965 F.3d 1159.  At a minimum, an officer must act reasonably under the circumstances and "not choose to ignore information that has been offered to him" or "conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts." Kingsland, 382 F.3d at 1229. Plaintiff has submitted no argument or evidence suggesting that either Defendant conducted an inadequate investigation.

Because the undisputed material facts here show that Detective Reed inserted no falsehoods into his Affidavits for Arrest, and she has asserted no claim for inadequate investigation, Plaintiff faces the following insurmountable hurdles. A magistrate reviewed Detective Reed's Affidavits for Arrest and found that they

established probable cause[18] to believe that Plaintiff had committed the charged crimes; thus, she signed warrants for Plaintiff's arrest.[19] "[A] valid and lawfully obtained warrant shields an officer from liability because the officer's reliance on the magistrate's probable-cause determination renders the officer's actions reasonable." Washington, 25 F.4th at 904. Moreover, probable cause renders a seizure pursuant to legal process reasonable under the Fourth Amendment. See Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010). Consequently, "the presence of probable cause defeats" a claim that an individual was seized pursuant to legal process in violation of the Fourth Amendment. Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016). "Because [Detective Reed] was entitled to rely on the warrant[s], [Ms. Brown] cannot prove that [he] 'violated [her]

_____

[18] "[P]robable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 898-99 (11th Cir. 2022) (quoting Dist. of Col. v. Wesby, 138 S. Ct. 577, 586 (2018)). "Probable cause does not require conclusive evidence and 'is not a high bar.'" Id. (quoting Wesby, 138 S. Ct. at 586). "A reviewing court must simply ask 'whether a reasonable officer *could* conclude . . . that there was a substantial chance of criminal activity.'" Id. (quoting Wesby, 138 S. Ct. at 586).

[19] "[I]t is of no moment that [Plaintiff] was later exonerated." Washington, 25 F.4th at 904; see also United States v. Martinez-Fuerte, 428 U.S. 543, 565 (1976) ("One . . . purpose [of the warrant requirement] is to prevent hindsight from coloring the evaluation of the reasonableness of a . . . seizure.").

Fourth Amendment right to be free from seizures pursuant to legal process.'"
Washington, 25 F.4th at 906 (quoting Luke v Gulley, 975 F.3d 1140, 1144 (11th
Cir. 2020)).   Thus, Plaintiff's Fourth Amendment malicious prosecution claim
against Detective Reed fails.

Because the legal process authorizing Plaintiff's seizure was not
constitutionally infirm with regard to Detective Reed, the Court examines whether
she can make such a claim against Captain Peyton.  As already discussed, Plaintiff
must submit probative evidence showing that Captain Peyton intentionally or
recklessly made misstatements or omissions that supported the Polk County
warrant application.[20]   Aguirre, 965 F.3d at 1165.   Captain Peyton argues that
"Plaintiff has not produced any evidence that [he] violated her rights in any way."
(Defs.' Br. in Supp. of Mot. for Summ. J. 15.)  Plaintiff did not respond to Captain
Peyton's argument.  (Defs.' Reply Br. 10-11.)  Given that failure to respond, the
Court deems Plaintiff to have abandoned her claim against Captain Peyton.  See
Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure

---

[20] Although Captain Peyton arrested Plaintiff, he did so on the authority of
arrest warrants out of Floyd County, Georgia.  Plaintiff has not argued or produced
any evidence that the legal process authorizing her seizure under the Floyd County
arrest warrants was constitutionally infirm.

to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party.").

Although one might assume that Detective Reed learned some information about the murder from Captain Peyton's witness interviews and inserted that information into his Arrest Affidavits, that is only an assumption. Because Plaintiff seeks to hold Captain Peyton liable here, it is incumbent upon her to submit proof (not assumptions) into the summary judgment record supporting any claim that Captain Peyton intentionally or recklessly made misstatements or omissions that Detective Reed used to support his Affidavits for Arrest. Aguirre, 965 F.3d at 1165. Because she has not done so, Ms. Brown cannot prove that Captain Peyton violated her Fourth Amendment right to be free from seizures pursuant to legal process. Thus, her Fourth Amendment malicious prosecution claim against him also fails.

### 2.   Tort of Malicious Prosecution

Even if Plaintiff could establish a genuine dispute of material fact over whether she suffered a seizure pursuant to a legal process that violated the Fourth Amendment against either Defendant, she must also prove the elements of a malicious prosecution claim to succeed on both her federal claim and her state law claim. Aguirre, 965 F.3d at 1157. "A claim for malicious prosecution claim under

§ 1983 or Georgia law requires showing '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" Green v. City of Lawrenceville, 745 F. App'x 881, 883 (11th Cir. 2018) (per curiam) (footnote omitted) (quoting Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008)); see also Wal-Mart Stores, Inc. v. Blackford, 449 S.E.2d 293, 294 (Ga. 1994) ("The elements essential to a cause of action under . . . § 51-7-40 are:   (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff.").

As already discussed, Plaintiff has submitted no probative evidence suggesting that Captain Peyton instituted or continued a criminal prosecution against her, as he did not sign the Affidavits for Arrest.  Detective Reed signed them.  Thus, Captain Peyton cannot be liable to Plaintiff for the tort of malicious prosecution.

But, even assuming that both Captain Peyton and Detective Reed instituted or continued a criminal prosecution against Plaintiff, she fails to establish other critical elements of a malicious prosecution claim.  For example, the undisputed

material facts show that there were no falsehoods in the Affidavits for Arrest, and the reviewing magistrate found that they established probable cause for the arrest of Ms. Brown.  "[T]he existence of probable cause defeats a § 1983 malicious prosecution claim." Grider, 618 F.3d at 1256; see also Washington, 25 F.4th at 904 ("[A] valid and lawfully obtained warrant shields an officer from liability because the officer's reliance on the magistrate's probable-cause determination renders the officer's actions reasonable.").  With regard to the state law claim, "[t]he gravamen of [a] complaint [under § 51-7-40] is the absence of probable cause on the part of the person instituting the prosecution." Blackford, 449 S.E.2d at 294.  Probable cause is absent "when the circumstances are such as to satisfy a reasonable [person] that the accuser had no ground for proceeding but his desire to injure the accused." O.C.G.A. § 51-7-43.  As shown above, there was probable cause; moreover, a reasonable jury could not conclude that Defendants had no grounds for proceeding but their desire to injure Ms. Brown.

In addition to the magistrate's finding of probable cause, a grand jury later indicted Plaintiff on six counts.  (See DSUMF ¶¶ 6, 81.)  "Although evidence of an indictment is not conclusive, it is prima facie evidence of probable cause which shifts the burden to the plaintiff to come forward with specific facts tending to show that probable cause did not exist for [her] arrest and that the charges against [her]

were instead motivated by malice." Thompson v. Howard Bros., Inc., 657 S.E.2d 4, 5 (Ga. Ct. App. 2008) (quoting Tate v. Holloway, 449 S.E.2d 72 (Ga. Ct. App. 1998)); see also Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996) ("A grand jury indictment constitutes prima facie evidence that probable cause existed for the prosecution." (citing Agbonghae v. Circuit City Stores, Inc., 448 S.E.2d 484, 486 (Ga. Ct. App. 1994))).

Ms. Brown fails to rebut the inference of probable cause created by her indictment.[21] She also lacks any evidence suggestive of malice. It is undisputed that Detective Reed and Captain Peyton harbored no ill will toward Ms. Brown, and she admits that she knows of no reason either of them would have to hurt her. (DSUMF ¶¶ 44, 54, 77, 79.) Because Plaintiff cannot establish the elements of a malicious prosecution claim under federal or state law, the Court grants summary judgment to Defendants and against Plaintiff on her Section 1983/Fourth

---

[21] Although Ms. Brown made exculpatory statements during the investigation, Detective Reed and Captain Peyton were not required to focus on them "in isolation" or accept them as true. Washington, 25 F.4th at 902 (explaining that officers are not required to believe or weigh evidence, such as exculpatory statements, "in such a way as to conclude that probable cause did not exist"). Detective Reed and Captain Peyton argue correctly that Ms. Brown's own inconsistent statements, combined with Mr. Walker's statement regarding her whereabouts at the time of the murder, more than suffice to support a probable cause determination. (Defs.' Br. in Supp. of Mot. for Summ. J. 9.)

Amendment malicious prosecution claim (Count II) and her state law malicious prosecution claim (Count IV).

**B.   Immunity**

Defendants assert qualified immunity to the Section 1983/Fourth Amendment malicious prosecution claim and official immunity to the state law malicious prosecution claim.  The Court addresses those defenses below.

**1.   Qualified Immunity**

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." Echols v. Lawton, 913 F.3d 1313, 1319 (11th Cir. 2019).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

An officer asserting qualified immunity "bears the initial burden [of] prov[ing] that he acted within his discretionary authority." Dukes v. Deaton, 852 F.3d 1035, 1041 (11th Cir. 2017).  Officers acting within their discretionary authority are "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct

37

was 'clearly established at the time.'" Wesby, 138 S. Ct. at 589 (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

It is undisputed that defendants acted within their discretionary authority (see FAC ¶ 56); therefore, Ms. Brown bears the burden of proving that Defendants are not entitled to qualified immunity.  As made clear above, she cannot do so.  Ms. Brown failed to establish a genuine dispute of material fact with regard to the unconstitutionality of her seizure.   "Since there was no Fourth Amendment violation, much less a clearly established Fourth Amendment violation, [Defendants Reed and Peyton] are entitled to qualified immunity." Paez v. Mulvey, 915 F.3d 1276, 1291 (11th Cir. 2019).  This Court is "obliged to grant qualified immunity to a law enforcement officer unless the plaintiff can demonstrate . . . that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation."  Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). Because Ms. Brown cannot demonstrate that the facts here establish a constitutional violation, qualified immunity bars her claim against the individual Defendants.[22]

_____

[22] As explained supra, the Court entered summary judgment against the Section 1983/Fourth Amendment claims brought against Detective Reed and Captain Peyton because there were no violations of Plaintiff's constitutional rights. "Given this conclusion, the Court need not . . . address qualified immunity."

## 2.   <u>Official Immunity</u>

Similar to qualified immunity which insulates officers at the federal level, official immunity under Georgia law "offers public officers and employees limited protection from suit in their personal capacities." <u>Schultz v. Lowe</u>, 874 S.E.2d 842, 845 (Ga. Ct. App. 2022) (quoting <u>Wilson v. Cromer</u>, 847 S.E.2d 213 (Ga. Ct. App. 2020)).  The Georgia Constitution provides:

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.

Ga. Const. Art. I, Sec. II, Par. IX.

Here, because investigating crimes such as the murder of Mr. Bentley and seeking arrest warrants for those individuals reasonably believed to be involved are

---

<u>Johnson v. Cnty. of Paulding, Ga.</u>, No. 4:18-CV-0136-HLM, 2018 WL 10582211, at *6 (N.D. Ga. Oct. 31, 2018), <u>aff'd</u>, 780 F. App'x 796 (11th Cir. 2019) ) (per curiam); <u>see also</u> <u>Hicks v. Jackson Cnty. Comm'n</u>, 374 F. Supp. 2d 1084, 1097 (N.D. Ala. 2005) ("As all of plaintiff's substantive claims are being dismissed on the merits, the court need not address the qualified immunity defense raised by defendants.").  Nevertheless, the Court addresses it here.  "Qualified immunity, therefore, serves as an alternative basis to dismiss the claims brought against [Defendants]." <u>Niziol v. Pasco Cnty. Dist. Sch. Bd.</u>, 240 F. Supp. 1194, 1211 (M.D. Fla. 2002).

discretionary functions, Detective Reed and Captain Peyton are insulated from suit barring evidence that they acted with actual malice.  See Wilson, 847 S.E.2d at 216-17.

> In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice or the reckless disregard for the rights and safety of others.  A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff.  Evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal.

Shultz, 874 S.E.2d 845 (quoting Wilson, S.E.2d at 217)).

Here, the undisputed facts do not support a finding of actual malice by Detective Reed or Captain Peyton toward Ms. Brown.  As discussed supra, neither Detective Reed nor Captain Peyton knew Ms. Brown before June of 2018 or harbored any ill will toward her.  Indeed, Ms. Brown admits that she knows of no reason either Detective Reed or Captain Brown would have to harm her.  Moreover, Ms. Brown's contention that an officer providing false statements to obtain arrests warrants is the "very nature of malice" is unpersuasive given her lack of affirmative evidence supporting that allegation and the totality of the evidence otherwise supporting probable cause for her arrest.

It appears that at worst Detective Reed and Captain Peyton's theory regarding Ms. Brown's involvement in Mr. Bentley's murder was weak and that seeking warrants for her arrest was "misguided," but without evidence of malice, their official immunity remains undisturbed.  See Marshall v. Browning, 712 S.E.2d 71, 75 (Ga. Ct. App. 2011).  Thus, minus deliberate intent to do wrong, which Ms. Brown has not shown here, "no liability attaches to the officer's exercise of his lawful discretion even when the decision to effectuate the arrest is flawed." Reed v. DeKalb Cnty., 589 S.E.2d 584, 588 (Ga. Ct. App. 2003).

In sum, Ms. Brown has failed to raise a triable issue over whether Detective Reed and Captain Peyton acted with actual malice in performing discretionary functions.  Accordingly, Detective Reed and Captain Peyton are entitled to official immunity and the Court grants their Motion for Summary Judgment as to Ms. Brown's claims for malicious prosecution under O.C.G.A. § 51-7-40.[23]

## C.   State Law Punitive Damages Claim

Ms. Brown seeks punitive damages under O.C.G.A. § 51-12-5.1.  (FAC Count V.)  However, because the Court has entered summary judgment against the

---

[23] Just as with qualified immunity (see supra note 22), official immunity is an alternative basis to enter summary judgment against Plaintiff's claims.

41

state law malicious prosecution claim against Detective Reed and Captain Peyton, summary judgment must also be entered against Ms. Brown's derivative claims for damages.  Perkins v. Thrasher, 701 F. App'x 887, 891 (11th Cir. 2017) (per curiam) (holding that state law claims for punitive damages and attorneys' fees "are derivative of Georgia tort law claims and thus require an underlying claim," and that such derivative claims failed because the underlying substantive state law claims were dismissed); see also Sparra v. Deutsche Bank Nat'l Tr. Co., 785 S.E.2d 78, 83-84 (Ga. Ct. App. 2016) (rejecting plaintiff's claim for punitive damages because he failed to state a claim upon which relief could be granted with respect to his substantive claims for relief).  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Ms. Brown's punitive damages claims under O.C.G.A. § 51-12-5.1.

### D.   The Doe Officers

In her FAC, Ms. Brown named the fictional Doe Officers as parties to this action.  (See FAC ¶ 5.)  She explained that the officers "are employed by the City of Cedartown or other Georgia Law Enforcement Agencies," but that their identities were unknown to her at that time.  (Id.)  Ms. Brown stated that she would amend the FAC when the Doe Officers' identities became known.  (Id.)

"[F]ictitious-party pleading," such as here, is generally not permitted in federal court.  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  However, in Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992), the Eleventh Circuit carved out a limited exception to this prohibition where a plaintiff's description of an unknown defendant is so specific that it is "at the very worst, surplusage."  Id. at 1215 n.6.  In short, fictitious-party pleading is permitted "where it is clear that discovery would uncover defendant's identity," or plaintiff's description is "sufficiently clear to allow service of process."  Id. at 1216 (first citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), and then citing Keno v. Doe, 74 F.R.D. 587, 588 n.2 (D.N.J.1977), aff'd without opinion, 578 F.2d 1374 (3rd Cir.1978)).

Here, in addition to her explanation discussed above, Ms. Brown provides only that that Doe Officers "were acting under color of state law and in the course and scope of their employment with the Law Enforcement Agencies for whom they were employed."  (FAC ¶ 5.)  Such description is wholly insufficient to identify the proper defendants among the many police officers employed by the City of Cedartown or any of the countless other law enforcement agencies located in the state of Georgia.  Thus, as written, the FAC's description of the Doe Officers precludes Ms. Brown from continuing this action against those fictitious defendants.

43

Furthermore, despite Ms. Brown's expressed intent to amend the FAC upon identifying the Doe Officers, as of the date of this Order, that has not happened. The period for conducting discovery in this matter ended on April 29, 2022.  (See Docket.)  The Motion for Summary Judgment has been fully briefed.  Ms. Brown's opportunity to discover the Doe Officers' identities therefore closed more than four months ago.  Such a significant lapse in time would almost certainly foreclose her ability to show diligence should she seek to name the individual Doe Officers as defendants in this action at this late stage.  Moreover, the docket provides no indication that Ms. Brown sought summonses or attempted service on any defendants other than Detective Reed, Captain Peyton, and the defendant previously terminated (Officer Watters).  See Fed. R. Civ. Pro. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant . . . .").  Accordingly, for the reasons set forth above, the Court sua sponte dismisses the fictitious Doe Officers.

## V.    **CONCLUSION**

For the reasons set forth above, the Court finds that Ms. Brown has failed to establish a genuine issue of material fact over whether Detective Reed or Captain Peyton maliciously prosecuted her in violation of the Fourth Amendment or

44

O.C.G.A. § 51-7-40.  Accordingly, Detective Reed and Captain Peyton's Motion for Summary Judgement [58] is **GRANTED**.

Furthermore, the fictitious Doe Officers are **DISMISSED**.  The Clerk is **DIRECTED** to terminate the Doe Officers as parties and to close this case.

**SO ORDERED**, this 4th day of October, 2022.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

45